COMMONWEALTH *vs.* FORTIS TATISOS.

Middlesex.   March 14, 1921. — April 7, 1921.

Present: RUGG, C. J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Witness*, Child. *Practice, Criminal*, Determination of competency of child witness, Exceptions.   *Child.*

The mere fact, that a girl was just past six years of age when she was offered by the Commonwealth as a witness at the trial of an indictment for an assault upon her with intent to commit rape, did not as a matter of law disqualify her as a witness.

Where a judge presiding at the trial of an indictment, in the exercise of his discretion after an examination of a child offered as a witness by the Commonwealth, has found and ruled that the child is competent to testify, such ruling will not be revised upon an exception by the defendant unless it is clearly erroneous.

At the trial of the indictment above described, the girl was carefully questioned by the judge on one day, after which the judge stated that he could not then bring himself "to the conclusion that this girl can qualify as a witness." With the permission of the judge, the girl received instructions from a priest of her mother's religious faith between court days and, after further extended examination on the next day by the judge and by the defendant's counsel, the judge permitted her to testify. *Held*, that no error appeared in the action of the judge.

INDICTMENT, found and returned on September 10, 1920, charging the defendant with assault with intent to commit rape upon one Catherine M., called Mabel, Stafford, a child about five years and ten months of age at the time of the assault.

There was a trial in the Superior Court before *Cox*, J., and the Commonwealth offered Catherine M. Stafford, then just past six years of age, as a witness.   The judge interrogated her, and she answered as follows:

Q. "I am going to ask you some more questions.   You don't mind, do you?"   A. " No."   (Shakes her head.) — Q. "What is your name?"   A. "Mabel Stafford." — Q. "How old are you?" A. "Six." — Q. "Where do you live?"   A. "10 Bolton Place."— Q. "What city?"   A. "Lowell." — Q. "Do you go to school?" A. "No, I don't go to school." — Q. "What do you do?"   A. "Stay in the house." — Q. "I thought you went to the sisters' school.  Do you?"   A. "Yes."   (Shakes her head.) — Q. "Do you

go to the sisters' school?" A. "Yes." —Q. "You used to go to the sisters' school, is that it?" A. "Yes."— Q. "Do you go to Sunday School?" A. "No." — Q. "To church?" A. "Yes." — Q. "I want to ask you a little more about the same thing I asked you before this morning. Do you know what happens to anybody when they tell a lie?" A. "Yes." — Q. "What is it?" A. "Lick them." — Q. "Who does the licking?" A. "The mother." — Q. "Anything else happen to them?" A. "Whipping." — Q. "Anything else besides that?" A. "No." (Shakes her head.) — Q. "Do you know why you are here today?" A. "No." — Q. "Do you know what an oath is?" A. Mouth?" — Q. "No, oath." A. "No." (Shakes her head.) — Q. "You told me that all the good people went to Heaven, this morning, didn't you?" A. "Yes." (Shakes her head.) — Q. "Where do the bad people go?" A. "Down to the ground." — Q. "If anybody asked you, told you to tell the truth, and you said that you would, what would you do?" A. "I would do nothing." — Q. "Would you tell the truth or would you tell a wrong story?" A. "Tell the truth." — Q. "Suppose you didn't tell the truth. Suppose you told a wrong story, what then?" A. "Get a licking." — Q. "Is that all?" A. "Yes." — Q. "Is it right to tell lies?" A. "No." (Shakes her head.) — Q. "Why not?" A. "Don't know." — Q. "How long have you gone to the sisters' school?" A. "I don't know." — Q. "What did they tell you there when you went? Did you have anything about the catechism? Ever hear about that?" A. "Yes." — Q. "What is it? Do you know any of it?" A. "No." (Shakes her head). — Q. "Did you ever hear of God?" A. "No."

The judge then stated: "As it stands, I cannot bring myself to the conclusion that this girl can qualify as a witness. I appreciate the seriousness of the charge against the defendant, not only in so far as he is concerned, but the community as a whole. It appears that this little girl has been some time to the sisters' school, and I should assume that she must have had some sort of instruction. She appears to be bright and intelligent, and her answers are direct, and it does not appear, so far as I can see, that she is answering anything as a result of any instruction. . . . The girl seems to be intelligent, and by that I mean she has intellect that seems to be responsive and I should be inclined not to

make my finding upon her story at this time if it should seem worth while to give her some instruction. That, however, is a matter, the result of which cannot be foreseen, and I will leave it entirely with you. I will make my ruling now or later."

With the approval of the judge, the trial of the case was suspended until the next day, the child in the meantime talking with the parish priest of her mother's religious faith. On the next day the child was further interrogated by the judge and answered as follows: Q. "How are you this morning?" A. "Fine." — Q. "Did the priest talk to you last night?" A. "Some." — Q. "Where did you see him, at your house, or did you go to his house?" A. "At the priest's house." — Q. "Do you know now what happens to little girls when they tell lies?" A. "God punishes them." — Q. "Who?" A. "God."

The defendant's counsel then interrogated and the child replied as follows: Q. "How long were you at the priest's house last night?" A. "Went out a little while." — Q. "You didn't know anything about God until last night?" A. "No." (Shakes her head.) — Q. "Did the police officer go with you?" A. "Yes." — Q. "To the priest's house?" A. "Yes." — Q. "Who is God?" A. "God is a creator." — Q. "Do you know what you came down here to court for?" A. "No, sir." — Q. "You don't know what it means when you hold up your right hand in court? You don't know what that means do you?" A. "No." (Shakes her head.) — Q. "You don't know what an oath is?" A. "I don't know what it is." — Q. "You don't know — how does God punish anybody?" A. "Sends them down to the ground." — Q. "Sends them in the ground?" A. "Down in the ground." — Q. "Where is God?" A. "God is up in heaven." — Q. "Who did you talk with besides the priest?" A. "What?" — Q. "Who did you talk with about God besides the priest?" A. "Mr. Petrie." — Q. "Mr. Petrie, he talked with you about God?" A. "Yes." — Q. "And who else?" A. "I don't know who else." — Q. "Was it last night after you left the court house that you went to see the priest?" A. "Yes." — Q. "You were with — how long were you with the priest?" A. "Just a little while." — Q. "You don't know how long?" A. "No, I don't know how long." — Q. "Now if you came here in court and said something that wasn't so —" A. "It would be a lie."

The judge thereupon ruled on the evidence that the child was a competent witness and permitted her to testify, subject to an exception by the defendant. The defendant was found guilty; and alleged exceptions.

E. J. Tierney, for the defendant.

R. H. Beaudreau, Assistant District Attorney, for the Commonwealth.

JENNEY, J. In the trial of an indictment for an assault with intent to commit rape upon Catherine M. Stafford, a child about five years and ten months old at the time of the alleged assault, and "just past" six years at the time of the trial, the child was permitted to give material evidence in behalf of the Commonwealth. The sole exception is to her competency as a witness.

It is clear that the tender years of the child did not disqualify her. While age is of importance, it is not the test. The child might have been much older and still have been unqualified to give testimony. Her capacity to observe, remember, and give expression to that which she had seen, heard, or experienced, was the crucial consideration.

Much which cannot be reproduced by the printed word depends on the child's appearance and manner. It is seldom that the discretion of the trial judge can be revised; its exercise must have been clearly erroneous to justify such action. This is because the question for decision is almost always one of fact and hence not reviewable. Commonwealth v. Hutchinson, 10 Mass. 225. Commonwealth v. Robinson, 165 Mass. 426. Commonwealth v. Reagan, 175 Mass. 335. Commonwealth v. Ramage, 177 Mass. 349. Commonwealth v. Marshall, 211 Mass. 86. Commonwealth v. Teregno, 234 Mass. 56. Wheeler v. United States, 159 U. S. 523.

The defendant urges that the witness did not understand the nature of the required oath and for that reason was improperly permitted to testify. As to this no precise line can be defined, and cases placed on one side or the other. The ultimate test cannot be the amount of moral training and religious understanding, but must depend upon the existence of understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment. The child need not and

probably will not understand this in all its fulness; it is unnecessary for her to do so. See Wigmore on Ev. §§ 1817, 1821; St. 1870, c. 393, § 1; G. L. c. 233, §§ 15, 19, 20. The question now considered also must be decided by the trial judge in the exercise of a wise discretion, and an appellate tribunal ordinarily will not review his determination. *Commonwealth* v. *Mullins*, 2 Allen, 295. *O'Connor* v. *Hallinan*, 103 Mass. 547.

If a child does not have the necessary understanding to comprehend the nature of the obligation imposed by the oath of a witness, he may be instructed in open court, or his testimony deferred until such instruction has been given. *Commonwealth* v. *Lynes*, 142 Mass. 577.

Applying these long settled principles to this case, no error appears. The child was examined twice, on different days, in the absence of the jury, and instructed by a priest in the interval. After most careful consideration, she was permitted to testify. While the bill of exceptions refers to the rulings of the judge it is evident that no ruling of law was made except such as followed the findings of competency necessarily made by the judge before the witness was permitted to testify.

*Exceptions overruled.*