COMMONWEALTH *vs.* RICHARD BRUSGULIS.

Middlesex. May 7, 1986. — August 25, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Witness,* Competency, Child, *Practice, Criminal,* Dismissal. *Constitutional Law,* Double jeopardy.

A judge applied an incorrect and overly stringent legal standard in determining that a child, aged three years and eight months, was incompetent to testify at a criminal trial because of her inability to explain the concept of "punishment" as a consequence for telling a lie. [329-330]

Where the judge at a criminal trial, following the first of two hearings on a child's testimonial competency concluded that the child, aged three years and eight months, knew "the difference between telling the truth and telling a lie," it was within the judge's discretion to rule at that point that she was competent to testify. [331]

A judge who has ruled that a witness is competent to testify may, at a later point in the trial, reconsider his ruling either on his own initiative or on motion, if he entertains doubt about its correctness. [331]

Statement concerning the latitude allowed a judge in devising trial procedures and modifying the usual rules of trial to accommodate child witnesses or other witnesses with special needs. [332]

Double jeopardy principles did not bar the retrial of a defendant following a judge's erroneous dismissal, "with prejudice," of the indictments against him, where the judge's action did not represent a ruling on the sufficiency of any element of the Commonwealth's proof and did not result from any prosecutorial misconduct. [332-333]

INDICTMENTS found and returned in the Superior Court Department on May 7, 1985.

Motions to dismiss were heard by *Hiller B. Zobel,* J.

The Supreme Judicial Court transferred the case on its own initiative.

*Margot Botsford,* Assistant District Attorney, for the Commonwealth.

*Paul A. D'Agostino* for the defendant.

ABRAMS, J. Pursuant to G. L. c. 278, § 28E (1984 ed.),[1] the Commonwealth appeals from an order of a judge in the Superior Court allowing the defendant's motions to dismiss two indictments with prejudice after a jury trial had begun. The indictments charged the defendant with rape of a child under sixteen and indecent assault and battery of a child under fourteen. G. L. c. 265, § § 23 and 13B (1984 ed.). The indictments arose from an incident alleged to have occurred during a weekend in March, 1985, when the child, who was approximately three and a half years old,[2] was visiting the defendant at his home.

At the trial, the judge conducted a competency hearing before the jury was empanelled. In examining the child, he asked some preliminary questions (name and address, age and birthdate, school and play activities) and then interrogated her about truth and lying.[3] He supplemented his original line of inquiry with further questions based on suggestions offered by defense counsel. At the end of the hearing, the judge determined that the child was competent to testify. He based this determination on his conclusion that she could differentiate between telling the truth and lying and could understand that punishment was a consequence of lying. The judge remarked: "I don't know how one can get any further with that, even with a person over the age [of] seven. They may know what the specific punishment is. The concept of punishment seems to be adequate for

---

[1] General Laws c. 278, § 28E (1984 ed.), provides, in pertinent part: "An appeal may be taken by and on behalf of the commonwealth by the attorney general or a district attorney from the superior court to the supreme judicial court in all criminal cases from a decision, order or judgment of the court (1) allowing a motion to dismiss an indictment or complaint, or (2) allowing a motion for appropriate relief under the Massachusetts Rules of Criminal Procedure." The availability of appellate review under the first clause is not limited to pretrial dismissals. See *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 306 & n.4 (1984). Thus, the Commonwealth has a statutory right to review of the dismissal. See *Commonwealth* v. *Therrien,* 383 Mass. 529, 532 (1981).

[2] The child was three years and four months old at the time of the alleged offenses. At the time of trial, she was three years and eight months old.

[3] See Appendix for the questions and responses.

this child. . . . I am persuaded she understands that if you tell a lie you get punished."

Subsequently, the jury was empanelled and sworn. The prosecutor made an opening statement. The judge then gave some preliminary instructions to the jurors and called a brief recess. At that point, it was approximately 12:30 P.M. The prosecutor asked the judge to recess the trial until the next morning because the child, who had been in court for five hours, was upset and crying. The judge denied this request, and the child took the stand.

On direct examination, the child stated that it was bad to tell a lie and that "you get punished" if you do so. She testified that the defendant had hurt her. When asked where she had been hurt, she put her hands in the area between her legs. However, when the prosecutor asked the child to demonstrate with anatomical dolls how she was hurt, the child repeatedly said that she did not want to do so. The trial was adjourned until the following morning.

When the child resumed testifying, she again stated that the defendant had hurt her and identified the area between the doll's legs as the area of her body where she had been hurt. When asked to provide further details of the incident, evidently she became quite upset. She would not describe what happened any further, saying repeatedly that she had already told how she got hurt and did not want to talk about it any more.

At the prosecutor's request, the judge called a recess. During the recess, defense counsel moved for a required finding of not guilty or a dismissal with prejudice. He argued that the child was not competent to testify.[4] The prosecutor pointed out that defense counsel's arguments related to credibility not competency, but she did not object to the judge's conducting a second competency examination.[5]

---

[4] Defense counsel stated: "I think it is almost a conclusive presumption that she isn't competent to testify at the age of three and a half because of the way questions are being asked and because of the reluctance of this little girl to testify, it's obvious she has been rehearsed a number of times."

[5] The judge noted that he was satisfied that the child had a "sufficient grasp" of the difference between fantasy and reality to go forward but "[t]hat

In the course of the second examination,[6] the child said that "[t]he truth is the thing you want and a lie you don't." She also said, "You get punished" for telling a lie, but "You don't get punished" for telling the truth. However, she could not define the word "punishment" or associate it with such terms as "spanking," "licking" or "whipping." Defense counsel objected to the prosecutor's suggestion to frame the question in terms of whether it was good or bad to be punished rather than defining the word.[7] The judge sustained the objection.

Defense counsel renewed his motions for a required finding of not guilty or, alternatively, dismissal with prejudice. The prosecutor objected, suggesting that a mistrial would be the appropriate remedy if the judge found the child incompetent. The judge expressed misgivings about the child's competency based on her inability to define the word "punished" or "certain of the more common phrases for the more common method of punishing a child." He equated this inarticulation with an inability to understand the consequences of lying. He decided to permit the prosecutor to complete her examination of the child in order to ascertain if the child understood the consequences of lying. The child, however, refused to testify. Defense counsel renewed his motions; the judge ruled that the child was incompetent as a matter of law because she "cannot tell me or would not tell me, what punishment meant." The judge added that his ruling was "fortified" by the fact that the child refused to testify.[8] Over the prosecutor's objection, the

___

is not what we are talking about now. What we are talking about now is a way of eliciting information from a child."

[6] Excerpts from this examination are set forth in the Appendix.

[7] The prosecutor's rationale was "so we can distinguish what she knows, because I think that is the important thing, not to know what that word [punished] is so much as to know what is good or bad and what you are supposed to do and what you are not supposed to do."

[8] The judge made these remarks even though a note had just been delivered to the courtroom indicating that the child said she would come back and answer defense counsel's questions.

judge then granted the defendant's motions to dismiss with prejudice for want of prosecution.[9]

1. *Competency of child witness.* The Commonwealth argues that the judge's dismissal of the indictments was improper because it was based on an erroneous ruling of law. See *Commonwealth* v. *Babb,* 389 Mass. 275, 283-284 (1983). The Commonwealth challenges the judge's determination that the child witness was incompetent to testify as a matter of law. Alternatively, the Commonwealth argues that the judge abused his discretion by reopening the subject of the witness's competency after having earlier ruled her competent.

General Laws c. 233, § 20 (1984 ed.), provides in part: "Any person of sufficient understanding, although a party, may testify in any proceeding, civil or criminal . . . ." The courts of this Commonwealth have long applied a two-prong test to determine competency: (1) whether the witness has the general ability or capacity to "observe, remember, and give expression to that which she ha[s] seen, heard, or experienced"; and (2) whether she has "understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment." *Commonwealth* v. *Tatisos,* 238 Mass. 322, 325 (1921). See also *Commonwealth* v. *Widrick,* 392 Mass. 884, 888 (1984); *Commonwealth* v. *Gibbons,* 378 Mass. 766, 770 (1979); *Commonwealth* v. *Welcome,* 348 Mass. 68, 70 (1964). The same test applies to all witnesses, whether adult, child, or subject to some disability. See *Commonwealth* v. *Whitehead,* 379 Mass. 640, 656 (1980), and cases cited. "The determination of competency is peculiarly within the province of the judge." *Widrick, supra* at 888. The judge is afforded wide discretion — indeed, is obliged — to tailor the competency inquiry to the particular circumstances

---

[9] In addition to presenting the child's testimony, the prosecutor anticipated presenting evidence from the child's mother, stepfather, three emergency room physicians, and the police. This evidence consisted of fresh complaint testimony as well as personal observation and medical records.

and intellect of the witness. Although the judge's determination will seldom be faulted on appellate review, *Whitehead, supra,* as with other discretionary rulings it will be reversed where the judge applies an incorrect legal standard. *Commonwealth v. Mullins,* 2 Allen 295, 296 (1861). See *Fletcher v. Cape Cod Gas Co.,* 394 Mass. 595 (1985); *Southwick v. Massachusetts Turnpike Auth.,* 339 Mass. 666, 669 (1959).

In this case, both the defendant and the judge focused their competency concerns on the witness's awareness of the obligation to tell the truth. On the first day of trial, the judge conducted a competency hearing and concluded "that the child does know the difference between telling the truth and telling a lie" and therefore ruled her competent. The next day, the judge conducted another competency hearing and ruled her incompetent because she was unable to explain to him the meaning of "punishment."

There is no requirement that a witness be able to explain "punishment"; it is particularly inappropriate to expect a three and a half year old to define that abstract concept.[10] As we stated in *Tatisos,* the witness must at least "in a general way, [express a] belief that failure to perform the obligation [to tell the truth] will result in punishment"; but a "child need not and probably will not understand this in all its fulness; it is unnecessary for her to do so." *Id.* at 325-326. If the witness does not possess "the necessary understanding to comprehend the nature of the obligation imposed by the oath of a witness, he may be instructed in open court, or his testimony deferred until such instruction has been given." *Id.* We therefore conclude that the judge applied an incorrect and too stringent legal standard in determining the witness's competency.[11]

---

[10] At the prosecutor's suggestion, the judge did ask the witness whether she knew the terms "licking," "spanking," or "whipping." Rather than listing all possible punishments and perhaps frightening the child, it would have been appropriate for the judge to frame his questions after asking the witness's mother what forms of punishment the witness might recognize and understand.

[11] We also note that the judge incorrectly characterized his competency ruling "as a matter of law." Clearly the ruling was a finding based on facts, and not a determination that a child of three years and eight months is not competent as a matter of law.

The judge's ruling need not be set aside, however, if, applying the correct legal standard, it would have been an abuse of discretion to find the witness competent. We cannot so say. The witness was three and a half years old. She clearly knew the difference between telling the truth and telling a lie; that "[t]he truth is the thing you want and a lie you don't"; that "you don't get punished for telling the truth"; but "you get punished" for telling a lie. The witness knew she was supposed to tell the truth and understood that undesirable consequences flowed from telling a lie. Beyond that, it would have been for the jury to decide if the witness testified truthfully. We cannot say that the judge abused his discretion in his earlier ruling that the witness was competent. Nor would a ruling that the witness continued to be competent have been an abuse of discretion.

The judge's application of an incorrect legal standard in determining the witness's competency undermines the dismissal of the indictments. However, before considering the appropriate disposition of this case, we take this opportunity to furnish additional guidance to the trial courts and parties on competency of child witnesses.

The Commonwealth suggests that the judge abused his discretion by reopening the competency question after he had already ruled the witness competent. Although competency must of course be determined before a witness testifies, the judge may reconsider his decision, either sua sponte or on motion, if he entertains doubts about the correctness of the earlier ruling. See *Whitehead, supra* at 655 & n.16. While the judge must be careful not to invade the jury's province of deciding the witness's credibility,[12] he may consider whether the witness's performance on the stand demonstrates a lack of awareness of the obligation to tell the truth or an inability to observe, remember, and recount.

---

[12] The defendant repeatedly challenged the witness's competency on the ground that she had been "rehearsed" by her mother, the prosecutor, and the victim witness advocate. Whether a witness testifies truthfully or according to some fictional script is for the jury to decide. The same may be said of the defendant's suggestion that the witness finagled candy from the prosecutor in exchange for her testimony.

The witness's *competency* must not be confused with *unavailability* to testify.[13] In this case, the child witness evidently became upset when asked to relate in detail an alleged episode of sexual assault. The court should have allowed the witness sufficient time to regain her composure before further considering the issue of her competency. Although a court need not tolerate excessive and repeated delays, judges must be sensitive to a child's limited stamina. Judges have considerable latitude in devising procedures and modifying the usual rules of trial to accommodate child and other witnesses with special needs, so long as the defendant's fair trial rights are not violated. Where such procedures may be necessary, they should be discussed in pretrial conference so that the defendant has adequate notice and so that potential problems can be considered with greater deliberation than when they arise mid-trial.

2. *Double jeopardy.* The judge's competency ruling and, consequently, the dismissal with prejudice of the indictments for want of prosecution were based on a legal error and therefore may be set aside. *Commonwealth* v. *Babb,* 389 Mass. 275, 283-284 (1983). The judge's conclusion that the dismissals were with prejudice so that there could be no retrial is a legal conclusion subject to appellate review. Clearly, however, the indictments may not be reinstated and the defendant retried if to do so would violate principles of double jeopardy.[14]

---

[13] That may have happened here. Before ruling the witness incompetent, the judge characterized the situation as "one in which a witness, for whatever reason not the fault of the defendant, is not available for cross-examination by the defendant." He then invited argument from counsel on the appropriate disposition of the case, given that circumstance. Only later did he rule the witness incompetent and refuse to allow her to resume her testimony, despite her expressed willingness to do so. See note 8, *supra.*

[14] The protection against double jeopardy in this Commonwealth is based not only on the Federal Constitution, but also on a statute and the common law. See *Commonwealth* v. *Steward,* 396 Mass. 76, 78 (1985). We have not addressed whether it is also within the due process protections of art. 12 of the Massachusetts Declaration of Rights and need not do so in this case. See *Lydon* v. *Commonwealth,* 381 Mass. 356, 366, cert. denied, 449 U.S. 1065 (1980). The defendant does not argue that in the circumstances of this case the various State sources offer more or different protection than the Federal Constitution. We therefore do not consider whether any differ-

The judge dismissed the indictments on the defendant's motion. Although "the double jeopardy clause does not necessarily prevent retrial of a defendant whose motion to dismiss his indictment, made after jeopardy has attached, is allowed," *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 311 (1984), citing *United States* v. *Scott,* 437 U.S. 82, 96-97 (1978), it does prevent retrial where the dismissal "actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged," *Babb, supra* at 281, quoting *United States* v. *Martin Linen Supply Co.,* 430 U.S. 564, 571 (1977), or where the dismissal is based upon "prosecutorial misconduct." *Lam Hue To, supra* at 311-312. See also *Smalis* v. *Pennsylvania,* 106 S.Ct. 1745, 1748-1749 (1986). Neither circumstance is present here. The judge refused the defendant's repeated request for a required finding of not guilty and did not otherwise indicate a ruling on the sufficiency of the Commonwealth's proof.[15] Nor was there any prosecutorial misconduct. Analytically, then, the dismissal of the indictment should be treated the same as a motion for mistrial. *Lam Hue To, supra* at 311. The usual rule is that "a mistrial granted upon the defendant's request does not present a bar to retrial on double jeopardy grounds." *Id.* at 310. *Babb, supra* at 282. See *Oregon* v. *Kennedy,* 456 U.S. 667, 672 (1982); *United States* v. *Scott,* 437 U.S. 82, 93 (1978).

We recognize that there may be some unfairness if this case is retried. In the year that has passed since the original trial, the witness's competency may have grown. On the other hand, her recall of the incident may have diminished. In any event, these potential variations in the strength of the Common-

---

ences do exist. Cf. *Berry* v. *Commonwealth,* 393 Mass. 793, 797-799 (1985) (greater protection under common law than under Federal constitution where Commonwealth has had *"one full opportunity"* to obtain conviction, fails to present evidence sufficient to support a conviction, defendant moves for required finding of not guilty, and judge declares mistrial after jury fails to agree on a verdict).

[15] The Commonwealth had not yet closed its case. See notes 8 & 9, *supra.* Thus, a ruling granting the defendant's motion for required finding of not guilty would have been premature. See Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979).

wealth's case are a consequence of the defendant's tactical choices at trial.[16] We cannot say that the defendant is unfairly prejudiced thereby.

3. *Conclusion.* The court's order dismissing the indictments against the defendant is vacated and the case is remanded to the Superior Court for further proceedings.

*So ordered.*

APPENDIX

The witness was questioned by the judge on two occasions. Excerpts from both competency hearings are set forth as follows:
"Q. Do you know what it is to tell the truth?
"A. Uh-huh.
"Q. What does it mean to tell the truth?
"A. To tell what really happened.
"Q. What does it mean to tell a lie?
"A. Punished.
"Q. You are punished if you tell a lie?
"A. Uh-huh.
"Q. What is a lie?
"A. You get punished."
The judge then asked the name of her stepfather (Billy).
"Q. If his name was Billy and you said his name was George would that be the truth or a lie?
"A. A lie.
"Q. Can you give me another for instance of what a lie is?
"A. A lie is that you get punished.
"Q. If I said your name was Julie, would that be the truth or a lie?
"A. A lie.
"Q. If I said that this robe is colored pink (indicates judge's robe) what would that be?
"A. A lie.
"Q. Why would it be a lie?
"A. Because it's black.
"Q. And if I said that I am holding up seven fingers, what would that be?

---

[16] Despite the judge's expressed uncertainty about the appropriate resolution of the unanticipated problem that had arisen, defense counsel refused the judge's offer to research and brief the issue and repeatedly demanded that the judge rule immediately. Over the prosecutor's objection, the judge did so. In these circumstances, the defendant may not be heard to complain.

"A. A lie.
"Q. Why? Why would it be a lie?
"A. Because.
"Q. TELL me.
"A. Because.
"Q. Because, because -- because why?
"A. Because it's five, four, three, all the fingers.

. . . .

"Q. How high can you count?
"A. One, two, three, four, five, six.
"Q. Can you count any higher than six.
"A. No.
"Q. Even if you tried hard?
"A. No.
"Q. Okay. Is that the truth or a lie?
"A. The truth.
"Q. What's the best thing to do, to tell the truth or to tell a lie?
"A. [Unresponsive.]
". . . .
"Q. You have a little bruise on your arm. . . . Does that hurt?
"A. No.
"Q. Is that the truth?
"A. Yeah.
"Q. Why is it the truth? Why do you think it's the truth?
"A. Because.
"Q. If it did hurt and you told me it didn't hurt, what would that be?
"A. A lie.
"Q. If it didn't hurt and you told me that it did hurt, what would that
be?
"A. A lie."
"Q. If it didn't hurt and you told me that it did hurt, what would that be?
"A. A lie."
The following are questions suggested by defense counsel:
"Q. You know what I didn't ask you. How tall are you?
"A. Big.
"Q. You are big? You are a big girl?
"A. Yes.
"Q. You are going to be four in November?
"A. Yes.
"Q. Is that the truth?
"A. Yes.
"Q. Is that a lie?
"A. It's the truth.
"Q. Is it a lie, though?
"A. No, it's the truth.

"Q. Can something be the truth and a lie at the same time?

"A. No. I said it's only the truth.

"Q. Can something be true at the same time that it's a lie?

"A. No.

"Q. Can a person say something that is true and a lie at the same time?

"A. No.

"     . . . .

"Q. How did you learn that you get punished when you tell a lie?

"A. Just punished.

"Q. But how did you know that?

"A. Because.

"     . . . .

"Q. Did someone tell you if a person tells a lie, a person gets punished?

"A. Ya.

"Q. Who told you that?

"A. Grammie.

"     . . . .

"Q. Is that your grandmother.

"A. Uh-huh.

"Q. Is that true that if you tell a lie you get punished?

"A. Ya."

Some of the questions and responses on the second competency hearing:

"Q. Can you tell me the difference between the truth and a lie?

"A. Yes.

"Q. What's the difference?

"A. The truth is the thing you want and a lie you don't.

"Q. The truth is the thing you want —

"A. Yeah. The truth is the truth.

"Q. What happens when you tell the truth?

"A. You don't get punished.

"Q. You don't get punished?

"A. No.

"Q. And what happens when you tell a lie?

"A. You get punished.

"Q. What does punished mean?

"A. I don't know.

"Q. You don't know what punished means?

"A. No."

"     . . . .

"Q. What I want to know is, if you tell a lie you get punished, what happened to you? Can you tell me that?

"A. Uh-huh.

"Q. Tell me.

"A. You tell the truth.

"Q. What does it mean to get punished.

"A. You get punished.

"Q. What happens when you get punished?

"A. I don't know. What did you want me to say? Do you know?

"Q. Why did you say to me that when you tell a lie you get punished?

"A. Because I did.

". . . .

"Q. What is spanking?

"A. You know this thing — Ivory Snow.

"Q. What is a spanking . . . do you know what a spanking is?

"A. No.

"Q. You don't know what a spanking is?

"A. No. Do you?

"Q. I asked you first.

"A. Do you?

"Q. Do you know what a spanking is?

"A. No.

"Q. Do you know what a licking is?

"A. No."

"Q. Do you know what a whipping is?

"A. No.

"Q. Do you know what a potch is?

"A. No.

"Q. Do you know what being a bad girl is?

"A. No.

"Q. Does anyone ever tell you you are a bad girl?

"A. No.

"Q. No?

"A. Uh-huh.

"Q. What happens to you if somebody says you are a bad girl?

"A. I don't know."