COMMONWEALTH vs. BRIAN A. CORBETT.

No. 88-P-461.

Essex. November 17, 1988. — January 19, 1989.

Present: KASS, CUTTER, & FINE, JJ.

*Witness,* Competency, Child. *Practice, Criminal,* Dismissal, Continuance, Speedy trial.

The judge at the trial of a complaint for indecent assault and battery on a child under age fourteen properly, in his discretion, ruled that the child witness was incompetent to testify. [775-777]

The temporary incompetence of a child witness to testify at a criminal trial was an insufficient basis for dismissal of the complaint "with prejudice." [777-779]

The record of a criminal case provided no basis for a claim that the defendant's right to a speedy trial had been violated. [779]

Discussion of a criminal defendant's right to a speedy trial as applicable to criminal trials delayed by the temporary incompetence of a child witness to testify. [779-781].

COMPLAINT received and sworn to in the Peabody Division of the District Court Department on July 17, 1987.

The case was heard by *Santo J. Ruma,* J., on a motion to dismiss.

*Elin H. Graydon,* Assistant District Attorney, for the Commonwealth.

*William P. Homans, Jr. (John F. Palmer* with him) for the defendant.

FINE, J. A District Court complaint issued against the defendant on July 17, 1987, charging him with indecent assault and battery on a child under fourteen in violation of G. L. c. 265, § 13B. The victim, four and a half years old when the alleged offense occurred on May 27, 1987, was the only percipient witness. On August 4, 1987, when the victim was four years and nine months old, a District Court judge conducted

a competency hearing. He asked the child numerous questions about her age, family members, friends, nursery school, and play and other activities, virtually all of which she answered with understanding and awareness. She was then asked a series of questions about the difference between truth and falsity and her obligation to tell the truth. Some of her answers indicated an ability to distinguish between truth and falsehoods; others indicated some confusion. Excerpts from the competency hearing relevant to the duty of truth-telling are reproduced in the appendix.

On September 10, 1987, the judge found the child incompetent to testify on the basis of several findings, the most significant one of which was that she did "not have an appreciation and a consciousness of the duty to tell the truth nor . . . a sense of the repercussions . . . of telling a lie." On October 26, 1987, the judge denied a request made by the Commonwealth on October 7, 1987, for reconsideration of the competency ruling. The request, supported by the report of an expert, asked the judge to consider testimony from the expert and review the transcript of the competency hearing.[1] The Commonwealth then requested a continuance for six months, a period during which, according to the prosecutor, the witness might become competent. The defendant objected, however, and the judge continued the case for trial only to November 5, 1987. On that date, the Commonwealth reported that, due to the adjudication of the victim as incompetent, the Commonwealth would not be prepared to try the case. Without amplification, the judge "allowed" a motion filed by the defendant seeking dismissal "with prejudice for want of prosecution."

On appeal taken pursuant to G. L. c. 278, § 28E, the Commonwealth contends that the judge erred, first, in finding the child victim incompetent to testify and, second, in dismissing the case with prejudice if the witness was properly found incompetent. A judge's conclusion that a criminal case should be dismissed with prejudice, thereby barring a subsequent trial on the

---

[1] The Commonwealth did not offer to present the child again for questioning, but only to present additional testimony from an expert. The judge's denial of the request for reconsideration was not an abuse of discretion.

same charges, is subject to appellate review. See *Common-wealth* v. *Brusgulis*, 398 Mass. 325, 332 (1986). We do not view this case as one of those rare ones in which we would overturn a judge's ruling on the competency of a child witness after a hearing in the course of which the judge has had the opportunity to observe at firsthand the child's demeanor. We do agree with the Commonwealth, however, that the dismissal should not have been with prejudice.

1. *The finding of incompetency.*

According to G. L. c. 233, § 20, as appearing in St. 1983, c. 145, any person of "sufficient understanding" is qualified to testify as a witness.[2] The judge indicated his familiarity with the applicable two-pronged test for determining whether a particular child of tender years has the requisite understanding to qualify as a witness. Competency, according to that test, depends upon "(1) whether the witness has the general ability or capacity to 'observe, remember, and give expression to that which she ha[s] seen, heard, or experienced'; and (2) whether she has 'understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment.' " *Commonwealth* v. *Brusgulis*, 398 Mass. at 329, quoting from *Commonwealth* v. *Tatisos*, 238 Mass. 322, 325 (1921).

Satisfying the first prong of the test presented no problem for this particular witness. The Commonwealth contends that the witness's answers to questions concerning her obligation

---

[2] As a result of the increasing frequency with which very young children are being called upon to testify as victim-witnesses in cases of alleged sexual assault, the competency issue has been the subject of a good deal of discussion in law reviews. See Christiansen, The Testimony of Child Witnesses: Fact, Fantasy, and the Influence of Pretrial Interviews, 62 Wash. L. Rev. 705 (1987); Myers, The Testimonial Competence of Children, 25 J. Fam. Law 287 (1986-1987); Defendants' Rights in Child Witness Competency Hearings: Establishing Constitutional Procedures for Sexual Abuse Cases, 69 Minn. L. Rev. 1377 (1985); The Competency Requirement for the Child Victim of Sexual Abuse: Must We Abandon It?, 40 U. Miami L. Rev. 245 (1985).

to tell the truth satisfied the second prong as well. The judge reached a contrary result because, according to the Commonwealth, he used an incorrect legal standard in appraising the child's answers to his questions about the consequences of not telling the truth. It is true that, to qualify as a witness, a child need not be able to understand and explain such abstract concepts as punishment or the likelihood that punishment would follow the giving of false testimony. See *Commonwealth* v. *Tatisos*, 238 Mass. at 325-326; *Commonwealth* v. *Welcome*, 348 Mass. 68, 70 (1964); *Commonwealth* v. *Brusgulis*, 398 Mass. at 330. The Commonwealth also correctly points out that "[t]he tendency . . ., except in quite clear cases of incompetency, is to let the witness testify and have the triers make any proper discount for the quality of her 'understanding'. . . ." *Commonwealth* v. *Whitehead*, 379 Mass. 640, 656 (1980).[3]

We think there was a sufficient basis here under the correct legal standard for the judge to exercise his discretion to find, as he did, that the witness was not competent. In answer to several questions the witness indicated that she was aware of the difference between a truthful statement and a lie. At other times, however, she indicated some confusion. For example, at one point during the interrogation by the judge, when asked if she would get in trouble if she told a lie, she answered, "No." At another point the judge asked, "If you don't tell the truth what will happen to you?," and she answered, "Nothing. No one can't get punished for nothing." He then asked, "So nothing would happen to you if you don't tell the truth," and she answered, "No." These answers might indicate something

---

[3] Recently adopted statutes in some States have gone far to assure that obstacles do not prevent receipt of testimony from very young children in sexual abuse cases. See, e.g., Colo. Rev. Stat. § 13-90-106 (1987) (child sexual abuse victims under age ten deemed competent to testify); Conn. Gen. Stat. § 54-86h (1987) (eliminates competency requirements for child sexual abuse victims); 33 Mo. Rev. Stat. § 491.060(2) (1986) (eliminating competency requirements for child victims of various crimes); Utah Code Ann. § 76-5-410 (Supp. 1988) (eliminating competency requirements for sexual abuse victims under age ten). Given the trend in favor of enabling young children to testify, subject to impeachment of their credibility, it is not surprising that no support has been found for the defendant's suggestion that the reasonable doubt standard applies to the finding of competency.

other than mere inability to explain abstract concepts or the meaning of punishment.

As the Commonwealth suggests, the witness may well have thought the questions to which she gave inappropriate answers related to the facts of the alleged assault and not to truth-telling generally. For example, when she stated that if she didn't tell the truth no one would be punished, she could have meant that if she didn't testify about what happened to her during the alleged incident, the defendant would not be convicted and punished. So construed, her answers could be viewed as consistent and generally indicative of an awareness of some obligation to be truthful. Perhaps, by suggesting questions for the judge to ask, the prosecutor could have cleared up any confusion in the child's understanding of the meaning of the questions. Although the judge asked the attorneys if they had any questions they wanted him to ask, the prosecutor suggested none. Instead, she responded that she would leave the matter to the judge's discretion.

It may well be that, on the record before us, a judge reasonably could have found the witness competent. The answers are sufficiently inconsistent, however, to persuade us that we should defer to the conclusions reached by the judge who had the opportunity, which we lack, to observe the manner and appearance of the witness on the stand. Because of the importance of such observations, a judge's discretion in ruling on a child witness's competency is very broad and only rarely faulted on appeal. See *Commonwealth* v. *Tatisos*, 238 Mass. at 326; *Commonwealth* v. *Whitehead*, 379 Mass. at 656; *Commonwealth* v. *Widrick*, 392 Mass. 884, 888 (1984); *Commonwealth* v. *Brusgulis*, 398 Mass. at 330; *Commonwealth* v. *Reid*, 400 Mass. 534, 542 (1987); *Commonwealth* v. *Jimenez*, 10 Mass. App. Ct. 441, 443 (1980).

2. *Dismissal with prejudice.*

Given the youthful witness's intelligence and ability to articulate clearly, there was good reason to believe that, if not competent at the time of the competency hearing, she would become competent relatively soon. In these circumstances, a short continuance would have been in order during which she

could have been instructed by some appropriate person on her obligation to tell the truth. See *Commonwealth* v. *Tatisos*, 238 Mass. at 324, 326; *Commonwealth* v. *Brusgulis*, 398 Mass. at 330. The Commonwealth made no request that she be so instructed. Instead, the Commonwealth suggested a continuance of about six months to allow the witness to mature. On its face, that request was not unreasonable. The temporary incompetence of a crucial child witness is a compelling justification for a delay in a criminal case. Compare *People* v. *Price*, 165 Cal. App.3d 536, 544 (1985); *Commonwealth* v. *Johnson*, 16 Mass. App. Ct. 935, 935-936 (1983). Continuance of a criminal case by a District Court judge for a period of more than ten days over a defendant's objection, however, raises a question of a possible violation of G. L. c. 276, § 35.[4] If a defendant does not agree to have his case continued for more than ten days, a District Court judge may dismiss the case to avoid a violation of the statute. Consequently, the judge was warranted in dismissing the case. Cf. *Commonwealth* v. *Ludwig*, 370 Mass. 31, 33-34 & n.1 (1976); *Commonwealth* v. *Boyer*, 6 Mass. App. Ct. 938, 939 (1978); *Commonwealth* v. *Conant*, 12 Mass. App. Ct. 287, 289-290 (1981) (a continuance exceeding ten days does not entitle the defendant to dismissal as of right, but, in considering question of denial of right to speedy trial, must be weighed against the length of delay, reason for delay, and prejudice caused to the defendant). The Commonwealth may not claim the dismissal caused prejudice to it merely because it would have to seek a fresh complaint when ready to proceed anew with the prosecution. Compare *Commonwealth* v. *Anderson*, 402 Mass. 576, 579 (1988).

The judge went beyond a mere dismissal, however, and ordered the case dismissed with prejudice. Dismissal with prejudice, viewed as a "draconian action," *Commonwealth* v. *Zannino*, 17 Mass. App. Ct. 73, 77 (1983), is proper only in cases

---

[4] General Laws c. 276, § 35, provides in relevant part that in criminal proceedings, other than those dealing with desertion, non-support, and illegitimacy, "the court or justice may adjourn an examination or trial from time to time, not exceeding ten days at any one time against the objection of the defendant . . . ."

involving double jeopardy, prosecutorial misconduct, and denial of speedy trial. See *id.* at 76 n.3 & 77-81. See also *Commonwealth* v. *Bailey*, 13 Mass. App. Ct. 1019, 1019 (1982). There is no basis here for a claim of double jeopardy or prosecutorial misconduct. The stated reason in the defendant's motion for the request for dismissal is "want of prosecution." In the absence of misconduct by the prosecutor or a showing that the defendant could not receive a fair trial, dismissal of a complaint on a basis such as want of prosecution should not be with prejudice. See *Commonwealth* v. *Amaral*, 16 Mass. App. Ct. 230, 231 (1983). Compare *Commonwealth* v. *Anderson*, 402 Mass. at 579.

On appeal, for the first time, the defendant contends that the judge implicitly allowed the motion to dismiss on speedy trial grounds. Neither the defendant's motion, nor the judge's notation on it, however, mentioned speedy trial.[5] Less than four months having elapsed between the time the complaint was brought and the motion to dismiss allowed, and the defendant having shown no actual prejudice and no lack of diligence on the part of the prosecutor, there was no basis in rule, statute, or constitutional principle for a claim of violation of the defendant's right to a speedy trial. See *Commonwealth* v. *Pomerleau*, 13 Mass. App. Ct. 530, 535-536 (1982). Contrast *Commonwealth* v. *Balliro*, 385 Mass. 618, 621-623 (1982); *Commonwealth* v. *Silva*, 10 Mass. App. Ct. 784, 789 (1980); *Commonwealth* v. *Plantier*, 22 Mass. App. Ct. 314, 317-318 (1986).

The defendant's contention that the judge had the defendant's speedy trial rights in mind when he acted on the motion to dismiss relates to the defendant's concern about having the case hanging over his head for some undefined period while waiting for the witness to achieve maturity. The delay with which the speedy trial rules are concerned, however, relates to

---

[5] Other than by marking "allowed" on the defendant's motion to dismiss with prejudice, there is no indication that the judge intended that the dismissal preclude further prosecution of the defendant on the same charges. At one point, during arguments by counsel on the Commonwealth's motion for a continuance following the finding of incompetency, the judge had said, "Why don't I just dismiss it and then you can do whatever you want from there. . . ."

the period postcomplaint or postindictment, not precomplaint or preindictment. See *Unites States* v. *Lovasco*, 431 U.S. 783, 788-789 (1977); *United States* v. *MacDonald*, 456 U.S. 1, 7 (1982); *Commonwealth* v. *Gove*, 366 Mass. 351, 358-361 (1974). Should new charges be brought against the defendant at some future time, he will have the opportunity to seek protection then against any undue delay under both the applicable statute of limitations and due process guarantees. The crime the defendant was charged with, indecent assault and battery on a child under fourteen years, G. L. c. 265, § 13B, has a six-year statute of limitations. General Laws c. 277, § 63, as amended through St. 1985, c. 123, provides that the limitations period begins to run when the victim turns sixteen or when the violation is reported to a law enforcement agency, whichever occurs first.

Delay before charges are brought may require dismissal on due process grounds "where the accused is able to carry the burden of showing that his defense was substantially prejudiced and that the 'delay has been intentionally undertaken to gain a tactical advantage over the accused or has been incurred in reckless disregard of known risks to the putative defendant's ability to mount a defense.' *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 688, 691 (1979). See *United States* v. *Marion*, 404 U.S. 307, 324 (1971)." *Commonwealth* v. *Best*, 381 Mass. 472, 484 (1980). See also *Commonwealth* v. *Ward*, 14 Mass. App. Ct. 37, 42-43 (1982). Any anxiety an individual may experience about possible future criminal charges is usually considered too speculative to constitute actual prejudice. See *Commonwealth* v. *Jones*, 6 Mass. App. Ct. 750, 757 (1978); *Commonwealth* v. *Conant*, 12 Mass. App. Ct. 287, 291 (1981). Contrast *Commonwealth* v. *Balliro*, 385 Mass. at 621, 623. Even a claim of a weakened memory due to the passage of time before a criminal charge is brought may not be enough to trigger due process protections. See *Commonwealth* v. *Imbruglia*, 377 Mass. at 690.

Countenancing dismissals with prejudice in these circumstances would have the unfortunate tendency to encourage prosecutors to delay bringing charges in child abuse cases until

such time as there is no longer a risk of having the child witness found incompetent. Persons accused of these crimes, as a result, would be disadvantaged in preparing their defenses. With that in mind, we do not think the Commonwealth in this case should be penalized for acting expeditiously in bringing the charges against the defendant. Should the Commonwealth renew the prosecution in a reasonably timely fashion, the defendant will at least have the advantage in preparing his defense of having received early notice of the charges against him. The question to be decided then will be whether, given the delay, he can still have a fair trial.

Accordingly, we affirm the order dismissing the complaint but direct that the words "with prejudice" be struck from the order.

*So ordered.*

APPENDIX.

Excerpts from the competency hearing on August 4, 1987, are set forth as follows:

Q. "Do you know what it means . . . when someone says you have to say the truth?"
A. "Yes."
Q. "Did your mother tell you you have to say the truth?"
A. "Yes, you have to tell the truth."
Q. "When did your mother tell you that? Did she tell you that today?"
A. "When I was going to tell her."
Q. "Did your mother ever tell you that you have to tell the truth?"
A. "Just one time."
Q. "Did she tell you what to say today?"
A. (Witness shakes head.)
Q. "Do you know what the truth is?"
A. "Yes."
Q. "What is the truth?"
A. "A lie isn't the truth."
Q. "And what happens to you if you do not tell the truth?"
A. "Then no one can't get in trouble."
Q. "If you tell the truth, will you get in trouble?"
A. "No."

Commonwealth v. Corbett.

Q. "If you tell a lie, will you get into trouble?"
A. "No."
Q. "You won't get into trouble?"
A. "But I am not going to tell à lie."
Q. "Have you ever told a lie?"
A. "No."
Q. "If you don't tell the truth, do you know what will happen to you?"
A. "What?"
Q. "You have to tell me."
A. "Okay."
Q. "Can you?"
A. "Yes."
Q. "What would happen to you?"
A. "Well, I can tell you just what happened."
Q. "What happened?"
A. "He just looked down my privates and touched me down there."
Q. "That's the truth. Are there other kinds of truth?"
A. "No, there is no more."
Q. "No more?"
A. (Witness shakes head.)

                                    .    .    .

Q. "Have you ever in your life told a lie?"
A. "No."
Q. "Do you tell the truth to your friends?"
A. "No, not tell it to my friends."
Q. "Do you ever lie to your friends?"
A. "Do I ever lie to my friends?"
Q. "Yes."
A. "No."
Q. "You always tell them the truth?"
A. "Well, I don't talk about that to them, to my friends."
Q. "You don't talk to them about what, the truth?"
A. "Yes."
Q. "Have you ever lied to your friends though?"
A. "No — yes."
Q. "In what way have you lied to your friends?"
A. "I don't know."
Q. "You don't know. Do you know if it is wrong to tell the truth in a court like where we are in this courtroom now?"
A. "No."
Q. "Do you know whether or not you have told any lies today?"
A. "No."
Q. "You have told the truth?"
A. "Yes."

Q. "Did your father or mother or anyone else tell you what to say today in court?"
A. "Yes — no, no, no."
Q. "What did they say?"
A. "No, no. I said no, no."
Q. "You said, no, no. So they didn't tell you what to say in court."

. . .

Q. "If you don't tell the truth, what will happen to you?"
A. "Nothing. No one can't get punished or nothing."
Q. "So nothing would happen to you if you don't tell the truth?"
A. "No."
Q. "And what would happen to you if you lie?"
A. "Then they couldn't punish anybody."
Q. "They couldn't punish anybody?"
A. "No."
Q. "Would your mother punish you if you tell the truth?"
A. "No."
Q. "Would she punish you if you tell a lie?"
A. "Yes, she might."
Q. "How would she punish you?"
A. "She just doesn't punish me."
Q. "Has your mother ever given you a licking for telling a lie?"
A. "No."

. . .

Q. "Is that green or is it blue?"
A. "Green."
Q. "And what if I said it was blue?"
A. "It is not the truth."
Q. "And what would happen to me?"
A. "Nothing."
Q. "You mean I won't get punished?"
A. "No."
Q. "Why?"
A. "You are the Judge to them."
Q. "I see. Because I am the Judge. And if you said it were blue, what would happen to you?"
A. "Well, then I will say it is a different color."
Q. "What if you said it were blue, what would happen to you?"
A. "Nothing."
Q. "Nothing would happen to you if you told a lie?"
A. "No, if I tell a lie once it happened to me."
Q. "Would you tell a lie only if it happened to you?"
A. "No — yes."