COMMONWEALTH *vs.* KATHLEEN M. GAMACHE, JJ.

No. 92-P-1077.

Middlesex. September 23, 1993. - January 21, 1994.

Present: DREBEN, KAPLAN, & GILLERMAN, JJ.

*Rape. Witness*, Competency, Child. *Practice, Criminal*, Argument by prosecutor.

The judge at a rape trial proceeded properly in determining that the victim, who was five years old at the time of trial, was competent to testify concerning incidents that allegedly occurred when she was between twenty-two and thirty-three months old. [806-810]

At a rape trial the judge correctly denied the defendant's motions for required findings of not guilty. [810-812]

Any errors in the prosecutor's closing argument at a criminal trial, to which no objection was made, created no substantial risk of a miscarriage of justice. [812]

INDICTMENTS found and returned in the Superior Court Department on December 13, 1988.

The cases were tried before *Paul C. Chernoff*, J.

*R. Brian Snow*, of New Hampshire, for the defendant.

*Judith B. Stephenson*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. After a joint trial with the codefendant, Dominic Sortino, the defendant was convicted of aggravated rape of her daughter, Jane,[1] under a joint enterprise theory and rape of Jane, a child under the age of sixteen.[2] Jane was born on February 12, 1985, was five years old at the time of trial (June, 1990) and was twenty-two months to thirty-three months old during the period of the incidents charged in the

---

[1] A pseudonym.

[2] The defendant was also convicted on an indictment for indecent assault and battery, but the indictment was dismissed with the assent of the Commonwealth.

indictments (January to November, 1987). The defendant claims: (1) that Jane should not have been found competent to testify; (2) that her motions for a required finding of not guilty should have been allowed; and (3) that factual misrepresentations in the prosecutor's closing argument created a substantial risk of a miscarriage of justice. We affirm the convictions.

1. *Competency of Jane.* The judge held two competency hearings and requested that a child psychiatrist from the Cambridge Court Clinic examine the child. See G. L. c. 123, § 19. After receiving the doctor's opinion, the judge found the child competent to testify.

The basic rule under G. L. c. 233, § 20, as appearing in St. 1983, c. 145, is that any person of "sufficient understanding" is qualified as a witness. "While age is of importance, it is not the test." *Commonwealth* v. *Tatisos*, 238 Mass. 322, 325 (1921). To determine whether a person is of "sufficient understanding" to be considered competent the courts of this Commonwealth "have long applied a two-prong test . . . : (1) whether the witness has the general ability or capacity to 'observe, remember, and give expression to that which she has seen, heard, or experienced'; and (2) whether she has 'understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment.'" *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 329 (1986),[3] quoting from *Commonwealth* v. *Tatisos*, 238 Mass. at 325. Whether the test is met is "peculiarly for the trial judge, and his determination will be rarely faulted on appellate review." *Commonwealth* v. *Whitehead*, 379 Mass. 640, 656 (1980). "Much which cannot be reproduced by the printed word depends on the child's appearance and manner. . . . [T]he question for decision is almost always one of fact" and, unless clearly erroneous, the judge's determina-

---

[3]In *Brusgulis*, the child was three years and four months old at the time of the alleged offenses and three years and eight months old at the time of trial. 398 Mass. at 326 n.2.

tion will not be set aside. *Commonwealth* v. *Tatisos*, 238 Mass. at 325. *Commonwealth* v. *Reid*, 400 Mass. 534, 542 (1987). "The tendency, moreover, except in quite clear cases of incompetency, is to let the witness testify and have the triers make any proper discount for the quality of her 'understanding.' " *Commonwealth* v. *Whitehead*, 379 Mass. at 656.

The defendant concedes that Jane satisfied the second component of the test. She argues, however, that Jane's inconsistent answers and her inability to remember many events, e.g., her date of birth, what month she was born, when she was going to be five years old, and, more particularly, the failure to show that she could "remember significant or cogent details of events in 1987 relative to the charges" in the indictments, required the judge to find Jane incompetent.

The judge acted correctly in not requiring Jane's competence to rest on a recall of other events or circumstances of 1987. Our cases only require a "general ability" to observe and remember. See *Commonwealth* v. *Brusgulis*, 398 Mass. at 329. See also *Malchanoff* v. *Truehart*, 354 Mass. 118, 119 (1968).

In *Malchanoff* v. *Truehart*, 354 Mass. at 121, the court pointed out that "strictly speaking the question [whether the witness could testify as to events which occurred when she was slightly more than three years old] was really not one of competency," but rather a question whether the witness has the requisite knowledge.

> "If the witness proposes to testify that he actually perceived a material matter, he must usually be permitted so to testify unless his story is inherently impossible or so fantastic that no rational person could reasonably believe it. . . . Consequently when a witness offers to testify to a personal experience relevant in itself, the question of the possibility of the truth of his story is rarely raised by an objection to admissibility. It is more generally raised by a request to charge the jury to disregard the story or by a motion for a directed verdict." *Id.* at

122, quoting from Model Code of Evidence, Rule 104, comment.[4]

Jane, at the first voir dire hearing (September 28, 1989), remembered specific facts regarding the alleged events. While Jane did not remember living with "Mommy Kathy" (the defendant), she recalled that Mommy Kathy "hurted me . . . at her house"; "she put her fingers in my body," "Daddy Dominic" was in "the living room" when she "was hurt." A bench conference was held during this line of questioning and thereafter no more inquiries as to the events of 1987 were made.

At the second voir dire hearing (October 23, 1989), the judge discussed with the prosecutor the feasibility of asking Jane questions, other than about the traumatic events, concerning what was happening in her life around the period of time covered by the indictments. The prosecutor replied that the incidents which gave rise to the indictments occurred when Jane was nonverbal and that she was not able to remember what her room looked like, her living situation, or other details from that period. The judge then permitted the prosecutor to question her to see how far back she could remember. Jane, in response to questions, told about the costume she wore the previous year on Halloween and numerous details about a Halloween party she attended in that year.

In addition to the obvious — "memory for the gist of events is more enduring than memory for details" — 1 Myers, Evidence in Child Abuse & Neglect Cases § 2.11, at 79 (2d ed. 1992); see *Commonwealth* v. *Whitehead*, 379 Mass. at 655-656 (victim's account of the happenings clear in its outlines though hazy in detail), appellate courts recognize that young children have considerable difficulty with the concept of time, and that a child's inability to place events in a

---

[4]Since the defendant sought a directed verdict (although not specifically addressed to the testimony of the child), and since the child's testimony on cross-examination at trial, as at the voir dire hearings, showed a lack of recall of ordinary events (eating, bathing, etc.) at the time of the incidents, we have extended our present discussion of this issue even though it is not strictly one of competence.

temporal framework does not render a child incompetent. See, e.g., *State* v. *Struss*, 404 N.W.2d 811, 815 (Minn. Ct. App. 1987); *State* v. *D.B.S.*, 216 Mont. 234, 240 (1985); *State* v. *Eiler*, 234 Mont. 38, 43 (1988); *State* v. *Lairby*, 699 P.2d 1187, 1196 (Utah 1984). See also Myers, *supra* § 2.12, at 87.

The defendant's other challenges to the judge's conclusion that Jane was competent are also without merit. Although some of Jane's answers were inconsistent, inconsistency is usually not a question of competency but rather a question of credibility, a matter left to the trier of fact except in very rare cases. See *Commonwealth* v. *Corbett*, 26 Mass. App. Ct. 773, 777 (1989), for such a case.

Contrary to the defendant's contention, the judge did not delegate to the psychiatrist the determination of competence. In his ruling the judge specifically made his own finding that Jane had the "capacity to perceive and recall." As pointed out in *Commonwealth* v. *Widrick*, 392 Mass. 884, 888 (1984), "G. L. c. 123, § 19,[5] operates as a supplement to a judge's traditional method of assessing competency [of a minor or person with some disability], e.g., the voir dire."

Nor was it error to exclude the defendant from the psychiatric examination. It was not a hearing, no evidence was taken, and the physician and the judge agreed in advance that "the events alleged in the case [were] not a part of the interview." The judge's memorandum, which was sent to counsel, states that it "was agreed that counsel would be excluded from the interview." While it is not clear *who* agreed, the Commonwealth asserts in its brief that counsel agreed. In any event, the record is devoid of any objection to the procedure to be followed as set forth in the memorandum sent to counsel. Moreover, in the judge's subsequent ruling on competence he stated: "In fairness to all parties, the Court would

---

[5]General Laws c. 123, § 19, as amended by St. 1986, c. 599, § 38, provides: "In order to determine the mental condition of any party or witness before any court of the commonwealth, the presiding judge may, in his discretion, request the department [of mental health] to assign a qualified physician or psychologist, who, if assigned shall make such examinations as the judge may deem necessary."

ask [the psychiatrist] to be available to give a report in open court prior to jury empanelment."

The transcript of the proceedings prior to empanelment discloses no request by the defendant concerning this matter. On this record, the defendant is not entitled to raise her present claims of a denial of due process and violation of her confrontation rights because she was absent during the psychiatric examination. Moreover, none of the cases cited by the defendant supports the claim that she had a right to be present. See Mass.R.Crim.P. 18(a)(3), 378 Mass. 888 (1979) (defendant need not be present at any proceeding where evidence is not to be taken).

2. *Motions for required findings of not guilty.* There was no error in denying the defendant's motions. The alleged acts took place when Jane had unsupervised visits with her mother. At the time she was living in foster homes. Jane testified that "Mommy Kathy" (the defendant) put her "fingers in my buggy," that "it hurted," and that "Daddy Dominic" (Sortino) "peed in my buggy" with his "buggy," that "Mommy Kathy" was also in the living room when "Daddy Dominic" did this, and afterwards, "Mommy Kathy" "washed me up" in the sink. This happened "a lot of times." "Daddy Dominic" "covered my mouth with his hand," and she cried "stop," that "Daddy Dominic" and "Mommy Kathy" also put "a toy that goes buzz" in her "buggy." They threatened Jane that if she told anyone about the events, "they won't love [her] anymore." Jane used anatomically correct dolls to indicate that her "buggy" was her vagina and that Sortino's "buggy" was his penis.[6]

Jane's foster mother, during the period beginning in October, 1987, through the time of trial, testified that Jane masturbated excessively, that she had seen Jane do so with a pencil, an eraser, a spoon, a toy, and with the edge of a door, that Jane had nightmares almost every night, acted in a sexual manner at play with dolls (pushed her finger back and forth between a teddy bear's legs), rubbed against the legs of

---

[6]Jane's testimony was also corroborated by fresh complaint testimony by her foster mother, the daycare provider, and the pediatrician.

men, and, when Jane sat in her foster father's lap, she pushed his hand down to her vagina.

Jane's daycare provider also noticed excessive masturbation. She masturbated on a rocking horse and with other toys. Once she took one of the chairs, tipped it upside down and tried to insert the chair leg into her vagina. She attempted to insert crayons into the genital area of her dolls.

A psychologist at Children's Hospital testified that there are recognized behavioral symptoms frequently displayed by sexually abused children under the age of four. These include age-inappropriate knowledge and sexual acting out to an adult, or to a doll, or toward themselves. Many sexually abused children have nightmares, cannot inhibit the experience of overstimulation and masturbate excessively. The child's pediatrician indicated that when he examined Jane in May, 1988, she had no hymen and the entrance to her vagina was enlarged. It was his view that only repetitive stretching over months would cause the tissue to remain enlarged.

The defendant points to testimony favorable to her position, particularly that other physicians examining Jane (at earlier times) found no physical evidence of sexual abuse and an intact hymen. She also lays stress on the fact that the psychologist at Children's Hospital on cross-examination stated that when she had examined Jane she did not think a sexual abuse evaluation was required.

The standard of review for the denial of a motion for a required finding of not guilty is, however, "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979) (emphasis in original). The evidence met that standard on both the charge of rape, see *Commonwealth* v. *Lewandowski*, 22 Mass. App. Ct. 148, 149-150 (1986); *Commonwealth* v. *Melchionno*, 29 Mass. App. Ct. 939, 940 (1990), and that of aggravated rape by joint venture. There was evidence that the defendant and Sortino each raped Jane in the other's

presence, that both threatened her that if she told anyone they would not love her, and that the defendant "washed [her] up" after Sortino raped Jane. The jury could also infer that, in view of Jane's very young age, the defendant knew that her presence would aid Sortino by assuring Jane's submission. See *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). The child's testimony was corroborated by medical evidence of physical and psychological symptoms of abuse, as well as by fresh complaint evidence.

3. *Prosecutorial misconduct.* The defendant did not object to the prosecutor's argument. While the prosecutor may have on occasion overstated the evidence, "[t]hat defense counsel at trial did not object to this portion of the closing argument is a sign that what was said sounded less [misleading] at trial than appellate counsel now would have it seem." *Commonwealth* v. *Deveau*, 34 Mass. App. Ct. 9, 14 (1993). Our review of the transcript leads us to conclude that whatever errors occurred in the prosecutor's recounting of the evidence, they did not create a substantial risk of a miscarriage of justice.

*Judgments affirmed.*