COMMONWEALTH vs. HENRY M. SPARE, JR.

Barnstable.   October 2, 1967. — November 8, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Evidence*, Hearsay, Statements to doctor, Corroborative evidence, Credibility of witness.  *Practice, Criminal*, Exceptions: whether error harmful.  *Error*, Whether error harmful.

At the trial of an indictment for rape, there was prejudicial error in permitting a doctor who had examined the complainant shortly after the alleged crime to testify, when asked what his "findings were" as to her condition, "She said that she'd been attacked by . . . [the defendant] and was attacked sexually and was overpowered," where the complainant's statement to the doctor was not introduced as a fresh complaint to corroborate her subsequent testimony.  [265–266]

It was prejudicial error at the trial of an indictment for rape, against a defendant who gave an assumed name when arrested and soon thereafter stated that he had done so "because he was AWOL from the Service," to permit extended cross-examination of the defendant, "on the matter of credibility," as to his activities with, and absence without leave from, the Marine Corps.  [266–267]

INDICTMENT found and returned in the Superior Court on October 4, 1966.

The case was tried before *Paquet*, J.

*Chester C. Paris* for the defendant.

*L. Barry Tinkoff*, Assistant District Attorney, for the Commonwealth.

CUTTER, J.  Spare was indicted for assault with intent to rape and rape.  He was found guilty of rape.  The trial was conducted under G. L. c. 278, §§ 33A–33G, as amended.  The case is before us upon Spare's appeal and assignments of error.  Upon the complainant's testimony the facts set out below could have been found.

Spare met the complainant on August 27, 1966, at her place of employment.  Subsequently they had a short conversation on the street.  He introduced himself as Chris Patterson.  Later that evening the complainant and Spare went to a drive-in theatre, and then to a restaurant.  Throughout the evening the complainant was driving her-

self and Spare in her own automobile. She was in control of the automobile at all times.

Spare asked the complainant to see his house. There were lights in it as they drove past between 1 A.M. and 1:30 A.M. Spare directed her not to stop, although she "probably would have" gone inside if invited. He asked if she would like to see his boat and gave her directions to follow a route over some dirt roads. Because she heard her license plate dragging, she stopped so that he could remove the plate.

Upon his return to the vehicle, Spare made advances to the complainant and removed some of her clothing. She became angry, cried out, and started to crawl from the automobile. Spare pushed her to the ground. She was screaming. Intercourse took place.[1] Spare attempted to apologize and, with the complainant driving, they returned to the place where she was staying. She talked with friends there and later came outside to speak to Spare. They parted on apparently friendly terms, and she agreed to "see him the next day at 10:30." About 2:30 to 2:45 A.M., she went to another friend's apartment.

Thereafter she told a male friend what had happened. She was then nervous and crying. About 3:30 A.M. she reported the matter to the police and was examined by a doctor.

1. The first assignment of error relates to the doctor's testimony about his examination of the complainant. He was asked what his "findings were," and stated that in such cases "we have a routine form which . . . is followed." After objection by Spare's attorney to the reading of "any narrative" in the report form and after a bench conference in which the judge apparently examined the report form and suggested terms in which the doctor might paraphrase the report, the testimony went as follows: "THE WITNESS: Well, this girl stated that early in the morning, roughly

[1] Spare's testimony, in his own defence, indicated that there was acquiescence by the complainant in his kissing her at the drive-in theatre and later on the woods road and in certain of his advances. Some of the complainant's testimony could be similarly interpreted.

around 2:00 A.M. on a woods road — THE COURT: Doctor, you didn't paraphrase it. THE WITNESS: She said that she'd been attacked by this young man and was attacked sexually and was overpowered." [2] An exception was saved.

The doctor was asked only for his "findings" concerning the complainant's condition. The answer was not responsive to the question. Her statements to him were not offered in express terms as basis for any expert opinion by the doctor (see *Commonwealth* v. *Colangelo*, 256 Mass. 165, 166–167) if, indeed, one could properly have been expressed on the basis of those statements. Cf. *Commonwealth* v. *Gardner*, 350 Mass. 664, 665–667. Cf. also *Morrissey* v. *Ingham*, 111 Mass. 63, 66; *Roosa* v. *Boston Loan Co.* 132 Mass. 439, 440–441, and *Commonwealth* v. *Sinclair*, 195 Mass. 100, 108–109. The doctor, in fact, testified that he could not state the cause of the rupture of the hymen (fn. 2). He merely reported his observations. The question about his "findings" could have been answered, and most naturally, by a mere statement of what physical conditions the doctor observed. The answer should have been struck from the record as unresponsive, if an appropriate motion had been made.

Admission of the complainant's statements to the doctor also was not expressly sought at the trial upon the so called principle of fresh complaint, as in a sense corroborating the testimony of the complainant, by showing that her conduct immediately after the episode was consistent with her charge of rape. See *Commonwealth* v. *Cleary*, 172 Mass. 175, 176; *Glover* v. *Callahan*, 299 Mass. 55, 57–58; *Commonwealth* v. *Ellis*, 319 Mass. 627, 629–630; Wigmore, Evidence (3d ed.) §§ 1134–1139, 1760–1761; *The Queen* v. *Lillyman*, [1896] 2 Q. B. 167, 178–179; *Thomas* v. *The Queen*, [1952] 4 D. L. R. 306, 313–316. See also *Commonwealth* v. *Gangi*, 243 Mass. 341, 344. No preliminary decision was sought by counsel, or made by the judge whether the report to the

---

[2] The doctor later testified that the hymen was broken, that there were no abrasions or bruises on the complainant's body, and that her clothing was not torn.

doctor was sufficiently prompt to constitute fresh complaint. See *Commonwealth* v. *Cleary*, 172 Mass. 175, 177. No instruction was given, or sought, that this testimony could be considered only on the issue whether it tended to corroborate the complainant (in the sense already mentioned) and that it could not be regarded as proving the circumstances reported.

A more precise objection than the general objection in fact made to the admissibility of the statement would have been appropriate. Cf. *Irving* v. *Goodimate Co.* 320 Mass. 454, 460; *Costonis* v. *Medford Housing Authy.* 343 Mass. 108, 116. Also, there was much specific evidence about what took place which may have reduced the likelihood of prejudice from the doctor's unresponsive answer. We cannot say, however, that the statement was not prejudicial where it was admitted generally without any preliminary finding that it was admissible by way of corroboration and without any limitation of its use by the jury.

2. Spare was arrested during the early morning of August 28, 1966. He gave his name as Chris Patterson until he was taken to the police station. There, after he had been "advised . . . of his rights," he was about to have his photograph and fingerprints taken. He then said that his real name was Henry M. Spare, Jr. as the police would "find out anyways." A police officer testified that he "asked him why he'd been using the name . . . Patterson and he said because he was AWOL from the Service." Spare's counsel objected and claimed an exception. The judge at once told the jury that it was not "material . . . whether this man was AWOL, but it's a matter of identification that I will permit . . . to stand."

Spare took the stand. On cross-examination, the district attorney called attention to the circumstance that Spare was wearing the uniform of the Marine Corps. Spare was then asked, "And when was the last time you answered a roll call?" Subject to exceptions by Spare's attorney, the trial judge permitted extended examination about Spare's activities with, and absence without leave from, the Marine

Corps, "on the matter of credibility on the use of name and what's been testified to." He instructed the jury, "This has nothing to do with this case . . . I have admitted it only for the purpose of credibility of the witness." In his charge he told the jury that the "fact that . . . Spare was AWOL is not to be considered . . . as a factor that he did commit rape" but that it might be considered on credibility.

No proof was offered, and probably none could have been made, that Spare had been convicted by court martial of the military offence of being absent without leave. See G. L. c. 233, § 21, as amended through St. 1950, c. 426. Pending the trial of the rape case, he appears not to have been tried for his absence. The effect of permitting cross-examination of Spare on his military status (at least beyond the bare fact of the reason given by him for his use of an assumed name) was to introduce and emphasize evidence, possibly highly prejudicial, that he was guilty of an offence of which he had not been convicted and which had no bearing on his guilt or innocence of rape. See *Commonwealth* v. *Bishop,* 296 Mass. 459, 461–462; *Jones* v. *Commonwealth,* 327 Mass. 491, 493–494; *Commonwealth* v. *Welcome,* 348 Mass. 68, 70–71. See also *Commonwealth* v. *Ellis,* 321 Mass. 669, 670. The evidence was not admissible to affect Spare's credibility. See *Commonwealth* v. *Binkiewicz,* 342 Mass. 740, 755–756 (where, however, the erroneous reception of evidence that a witness had been absent without leave could not have affected determination of the issue of the defendant's guilt and thus was not prejudicial). Cf. *Commonwealth* v. *Smith,* 342 Mass. 180, 185–186.

*Judgment reversed and the*
*verdict is set aside.*