Commonwealth *vs.* Harry H. Hanger, Jr.

Berkshire. March 2, 1970. — May 6, 1970.

Present: Wilkins, C.J., Spalding, Kirk, Reardon, & Quirico, JJ.

*Evidence,* Corroborative evidence. *Practice, Criminal,* Suppression of evidence.

It could not be said as a matter of law in a rape case that the victim's complaint to a police officer came too late to be admissible to corroborate the victim's testimony at the trial where it appeared that immediately after the alleged attack the victim drove some seven miles on a turnpike and upon coming to a toll booth, told the toll keeper that she had been "robbed, beaten and raped" and a few minutes later informed the officer of the incident. [466]

A police officer's account of his extensive questioning of the complainant in a rape case soon after the alleged attack, from which were drawn the details of the crime, was not inadmissible as suggestive or leading at the trial where it appeared that the victim suffered severe injuries about the head, mouth, and body which could have affected her ability to speak and think clearly and that the officer did not implant any ideas in the victim's mind which she had not previously expressed in an earlier complaint. [467]

There was no error at the trial of an indictment for rape in the admission in evidence of certain garments which belonged to the victim and which were found in the defendant's room and adjacent hallway, where the defendant initially made no objection to their introduction and later made a motion to suppress but did not identify the articles of clothing he sought to suppress. [468]

Indictment found and returned in the Superior Court on April 3, 1968.

The case was tried before *Macaulay,* J.

*Reuben Goodman (Stephen Axelrad* with him) for the defendant.

*Leonard E. Gibbons,* Assistant District Attorney *(William R. Flynn* with him), for the Commonwealth.

Reardon, J. The defendant was convicted of rape of one Bridget A. Creque in a trial held subject to the provisions of G. L. c. 278, §§ 33A–33G, and alleged various assignments

of error, two of which he prosecutes here. We relate only those details in this sordid case necessary to dispose of it.

1. The defendant complains in his first assignment that a 1,500 word account of a conversation held by a police officer with the complainant which included her answers to over sixty-five questions was hearsay and inadmissible as fresh complaint because of the use of leading and suggestive questions. The complainant had driven from Caribou, Maine, with her four children aged twelve, eleven, ten and three to Lee, Massachusetts, while on her way allegedly to visit her ex-husband in Flint, Michigan. She arrived in Lee in the late afternoon on December 31, 1967, and went to an establishment known as the Morgan House, where she went into the bar and cocktail lounge and sat at a table. The defendant was seated at the bar. She had "a couple of beers," and after some conversation with the defendant who had joined her at the table indicated that she would like a place to stay. The defendant stated that he worked at Lee Academy and offered her a place to sleep and to obtain food for herself and her children. Having been at the Morgan House for one and a half hours, she and her children left the cocktail lounge and the defendant drove them to the academy. The defendant led the children to an upstairs room in an academy building which had mattresses on the floor where they were to sleep, and then asked the complainant to join him in "a drink." She went downstairs to his room where he mixed an alcoholic drink, following the consumption of which he attacked her, removed certain portions of her clothing, threatened her with a knife, inflicted a number of knife wounds, and raped her. After some time the complainant managed to get away wearing only her dress, gathered her children together, and left the school premises. She drove to the Massachusetts Turnpike and proceeded to the New York State line where she stopped at a toll booth. There she discovered that she had "just a couple of dollars." Since her face was bruised and bloody and she had other wounds from which she was bleeding, she asked the toll keeper to call the police because

she had been "beaten up and raped." Trooper Gillespie of the Massachusetts State Police arrived to take her to the hospital where she was examined and where she remained for eight days. The defendant's assignment is an attack upon the testimony of the complainant's conversation with the police officer relative to the details of the events briefly outlined above, and a particular objection is made on the basis that "both the complaint of rape and the details were drawn from Mrs. Creque by Officer Gillespie." The defendant claims that it was "only with great reluctance and after a series of questions culminating in, 'Did he rape you?' that she said, 'Yes, he did.'"

We have stated that evidence of a fresh complaint in a rape case is not "admitted as part of the *res gestae,* or as evidence of the truth of the things alleged, or solely for the purpose of disproving consent, but for the more general purpose of confirming the testimony of the . . . [victim]." *Commonwealth* v. *Cleary,* 172 Mass. 175, 176–177, and cases cited. When a female witness testifies in such a case "the mere absence of evidence of an earlier complaint discredits her" so that earlier statements of the witness may be admitted for the purpose of corroboration. *Glover* v. *Callahan,* 299 Mass. 55, 57. Not only evidence of the complaint is admissible but her whole statement including the details. *Glover* v. *Callahan, supra,* at p. 58. In this case the victim drove to a toll booth on the Massachusetts Turnpike approximately seven miles from the entrance to the turnpike in Lee, where she told the toll keeper that she had been "robbed, beaten and raped." A few minutes later Officer Gillespie appeared and she informed him of the incident. It cannot be said as a matter of law that this complaint came too late to be admissible. *Commonwealth* v. *Cleary,* 172 Mass. 175, 177. *Commonwealth* v. *Rollo,* 203 Mass. 354. *Commonwealth* v. *Ellis,* 319 Mass. 627, 630.

The defendant's major contention questions the voluntariness of the complaint. The testimony of the police officer as we review it clearly reveals that the details of the crime were drawn from the victim through a series of ques-

tions from the police officer which the defendant contends were suggestive and leading. It is argued that his testimony is thus inadmissible. *Rex* v. *Osborne,* [1905] 1 K. B. 551, 556. We have said that statements do not cease to be voluntary merely because they are given in response to questions. *Commonwealth* v. *Ellis, supra,* at p. 630. We are bound to inquire, however, whether such questions were suggestive or leading and to assess such role as they may have played in determining the voluntariness of the complaint. The circumstances attending the conversation of the victim and the police officer are obviously significant in a determination of that issue. The officer testified that when he first observed the victim seated in a car "[h]er face was swollen and around her eyes and her mouth and there was a large swelling on her forehead. Her face was covered with what appeared to be dry blood. Her clothing was — there was blood spattered upon it. Her hair was in disarray. It was all over her head. Her clothing was hanging rather loosely from her body." He further stated that the victim was "sometime having trouble talking to me because of the swelling around her mouth. I had to keep going over what she was saying to make sure that I was getting it all clear." The officer's description and the testimony of the attending physician who examined the victim make it apparent that she had suffered severe bruises and other injuries on her body. Because of the nature and extent of her injuries which could have affected her ability to speak and think clearly, the method of inquiry employed by the officer which brought forth the complaint was proper. His questioning, although extensive, does not seem to us leading or suggestive, and he did not implant any ideas in the victim's mind which she had not previously expressed at the toll booth. In sum, we find no error in the admission of his testimony.

2. The second assignment concerns the admission in evidence of certain garments which belonged to the victim and which were found in the room where the crime occurred and in the adjacent hallway. When they were introduced in evidence, no objection was made. However, during a later

portion of the trial, when a police officer who had searched the premises where the crime occurred was on the stand, the court excluded his testimony with respect to his observation of the premises and the garments upon the concession by the prosecution that the officer was not armed with a warrant at the time of the search. There was no evidence that the police had the defendant's consent to make the search. The defendant later made a motion to suppress the evidence relative to the garments which the court denied. There was no error in the denial of the motion. This motion in the circumstances of this case was not timely. Rule 101B of the Superior Court (1954).

Assuming that it was filed in time, we bear in mind that "[o]n a motion to suppress the burden of establishing that evidence has been illegally obtained is on the moving party." *Commonwealth* v. *Fancy,* 349 Mass. 196, 202. It appears that the defendant failed to introduce evidence as to which, if any, articles of clothing were discovered in his room. The judge was not required to make a decision on the motion where the evidence sought to be suppressed was not identified by the moving party. *Commonwealth* v. *Roy,* 349 Mass. 224, 227. Since the defendant did not meet the burden of establishing which evidence he sought to have suppressed there was no error in the admission of the articles of clothing in evidence. *Commonwealth* v. *Mitchell,* 350 Mass. 459, 464.

*Judgment affirmed.*