COMMONWEALTH *vs.* CHERYL AMIRAULT LEFAVE.
(and eleven companion cases).[1]

Middlesex. March 8, 1990. - July 11, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Rape. Indecent Assault and Battery. Evidence*, Relevancy and materiality, Motive, Fresh complaint. *Witness*, Child. *Practice, Criminal*, Argument by prosecutor, Duplicative convictions.

At the trial of indictments for sexual abuse of children, testimony of an expert on child pornography was relevant and admissible on the issue of the defendants' motive, i.e., that they committed the sexual abuse for the purpose of obtaining pornographic photographs. [931-934] LIACOS, C.J., dissenting.

At the trial of indictments for sexual abuse of children, the judge's instructions did not invite the jury to consider certain admissible evidence improperly as evidence of "other crimes" or as evidence that the defendants were part of a common scheme to engage in child pornography. [935-938] LIACOS, C.J., dissenting.

In a criminal case, the prosecutor's closing arguments were not demonstrated to have been prejudicial so as to require reversal of the defendants' convictions. [938-940]

At the trial of indictments for sexual abuse of children the judge did not err in admitting fresh complaint testimony of the mother of one of the children that was more detailed than the direct testimony of the child. [940-941]

There was no error in the trial judge's determination of the competency of child-victims to testify in a sexual abuse case. [941-942]

There was no merit to criminal defendants' claims that evidence of a single sexual assault on a child could not support a verdict of guilty on charges of both rape and indecent assault and battery, where at the time of the offenses indecent assault and battery of a child was not a lesser included offense of the crime of rape of a child. [942-943]

---

[1]Six against Cheryl Amirault LeFave and five against Violet Amirault.

INDICTMENTS found and returned in the Superior Court
Department, six on January 21, 1985, and six on September
19, 1985.

The cases were tried before *John Paul Sullivan*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Juliane Balliro* for the defendants.

*Kurt N. Schwartz*, Assistant District Attorney, for the
Commonwealth.

ABRAMS, J. A jury found the defendants, Violet Amirault
(Amirault) and Cheryl Amirault LeFave (LeFave), guilty of
indecent assault and battery on a child under the age of four-
teen and rape of a child under the age of sixteen.[2] The con-
victions involved four child-victims, both female and male.
On appeal, the defendants claim that the trial judge erred in
(1) permitting testimony on the subject of child pornography;
(2) admitting evidence of fresh complaint; (3) determining
that the child-witnesses were competent to testify; (4) deny-
ing the defendants' motion for required findings of not guilty
on two indictments; and (5) denying their motion for mistrial
based on the prosecutor's closing argument. We transferred
the case here on our own motion. We conclude that there
was no reversible error. We affirm.

We summarize the evidence presented at trial. The de-
fendant Amirault was the owner and director of the Fells
Acres Day School (Fells Acres) in Malden. Amirault's
daughter, the defendant LeFave, worked at Fells Acres as a
teacher. We previously have described the general manner in
which Fells Acres was operated. See *Commonwealth v.
Amirault*, 404 Mass. 221, 224 (1989). When the rest of the
school's population went on field trips, some children occa-
sionally remained at Fells Acres in the care of Amirault,
LeFave, or Gerald "Tooky" Amirault, who also worked at
the school and is Amirault's son and LeFave's brother. The

---

[2]Amirault was convicted on three indictments, and LeFave on four in-
dictments, of indecent assault and battery on a child under the age of four-
teen. Amirault was convicted on two indictments, and LeFave on three
indictments, of rape of a child under the age of sixteen.

four victims in this case were among the children who occasionally were left at the school during those field trips.

On September 2, 1984, a mother of a Fells Acres child made an allegation of sexual abuse against Gerald Amirault.[3] After Fells Acres was closed in September, 1984, a parents' meeting was held at the Malden police station, where parents were informed of the symptoms of sexual abuse and directed to question their children about a magic room, a secret room, and a clown.

The children's descriptions of the sexual abuse varied in some details, but were similar over all. The three female victims each testified that the defendants took them separately to the "magic room," described as a bathroom on the second floor of the school with a small, child-sized door. Two girls testified that both of the defendants touched her naked "bum" and vagina with their (the defendants') hands or a purple "magic wand." One of the girls testified that only LeFave touched her vagina and "bum." One child was forced to touch both of the defendants' "bums" and to kiss their vaginas. One of the girls testified that both of the defendants inserted their fingers, a thermometer, and the "magic wand" into her vagina or "bum." A second girl testified that LeFave inserted a thermometer and a pencil into her vagina and rectum.

The male victim testified that the defendants took him to a garage at Amirault's house. There, Amirault "stuck a stick up [his] bum" and LeFave "put her mouth on his private spot [penis]." He stated that the defendants hurt birds and squirrels in front of the children and the teachers; that they gave him white pills which he never took; and that they tied him, naked, to a tree in front of the other children and teachers.

Each child testified that she or he was photographed in the nude by one of the defendants while the abuse occurred. Two of the children described a black camera on a tripod. The

---

[3]In *Commonwealth* v. *Amirault*, 404 Mass. 221 (1989), we affirmed the convictions of Gerald Amirault.

other two described a black camera with pictures that came out of its front. While at home, one child spontaneously demonstrated "sexy" poses in the nude for her mother.

All of the children stated that they were threatened by one or both of the defendants that if they told anyone about the incidents, they would be sent away from home or killed by their mothers or that the defendants would kill the children's parents. A child who attended Fells Acres but who was not a victim testified that he overhead Amirault tell the male victim that "you better keep quiet or else I'll cut your mother's arm off."

The parents of the child-witnesses testified about their children's behavior while, or shortly after, attending Fells Acres. All four of the child-victims began to demonstrate pronounced sexual behavior. Two of the children made sexual advances toward their mothers. Most of the children began nightly bedwetting, had nightmares, and developed a fear of being alone. Several reverted to baby talk, screamed and cried when bathed, exhibited fear at the sight of LeFave, and complained of pain in their genital areas.

Dr. Renee Brant, a child psychiatrist testifying for the Commonwealth, stated, in part, that sexualized behavior[4] is a symptom of sexual abuse. Trauma specific behaviors include sexualized behavior such as masturbation, inserting objects into body cavities, approaching others in a sexually provocative manner, or asking others to touch their genitals. Trauma nonspecific behaviors include complaints of stomachaches, headaches, nightmares, sleep difficulties, aggressiveness, lack of trust, nervousness, baby talk, bedwetting, withdrawal, lying, separation anxiety, and hyper-vigilance.

Dr. Jean Emans, a pediatric gynecologist, examined the three female victims who testified in this case and made positive findings as to all of them. All suffered vulvitis. See *Amirault, supra* at 226. Two had redness around their labia

---

[4]Sexualized behavior here includes more frequent and compulsive masturbation, insertion of objects into body cavities, touching the genitals of parents and other children, exhibitionism, and imitation of intercourse.

and one child also had cracking and fissuring around her labia and a small bump on her hymen. Dr. Emans testified that these findings were significant because they are more commonly seen in sexually abused children than in nonabused children and that it was unusual to have found vulvitis in three girls under the age of six who attended the same school.

In their defense, the defendants offered testimony from twelve teachers and teachers' aides employed at Fells Acres. Those employees stated that they never heard of a magic room nor did they see any indication of sexual abuse. One said that she never returned from a field trip to find the defendants alone with children. Each denied seeing the male tied naked to a tree or that animals were harmed.

Defense witness Dr. William Erickson, a psychiatrist, testified that some of the behaviors seen in sexually abused children can be attributed with equal frequency to causes other than sexual abuse. He testified that the most common source of excessive sexual behavior in children is observed behavior in the home. He also commented on videotaped interviews of the three female victims and stated that, in his opinion, the interviewer made no effort to distinguish between fact and fantasy. A psychologist, Dr. Sherry Skidmore, reviewed one taped interview and testified that the interview procedure was flawed. The pediatrician of one female victim, Dr. Andrew Guthrie, testified that his examination of the child in September, 1984, when the school was closed, showed no signs of vulvitis.

1. *The admission of inspector Dunn's testimony on child pornography.* The last prosecution witness was John Dunn, a United States postal inspector specializing in the investigation of child pornography. Dunn testified that he had seen approximately one thousand pornographic photographs of male and female children between the ages of three and six years old. He stated that "still" photographs included the thirty-five millimeter variety and that "Polaroid" types were "very common."

Dunn described the types of poses and props or paraphernalia generally seen in child pornography. As he testified, he had in front of him on a podium, out of the jury's view, photocopies of pornographic photographs involving children that had been seized in unrelated cases. Those photocopies were not introduced in evidence or displayed to the jury. Dunn was allowed to refer to particular photographs during his testimony. Defense counsel repeatedly objected to Dunn's testimony and the use of the photographs. As Dunn's descriptions of a particular photograph became more detailed, defense counsel made an oral motion for a mistrial. The judge denied the motion.

Dunn testified that child pornography usually depicts nude or partially nude children posed in a manner focusing on a genital area. Testifying from his general knowledge and by direct reference to the photographs, Dunn described young children engaged in a variety of sexual acts with both male and female adults. Although he described poses and props similar to those mentioned by the children here (sticks, pencils, thermometers), he also described poses and objects that were not alleged to have been involved in this case.

Dunn briefly described the underground market for child pornography and testified that there is a market for the types of photographs he had described. He stated that child pornography involving prepubescent children is not readily available to members of the public and that it is extremely difficult for investigators to locate pornographic photographs or to identify a child in a particular photograph.

On cross-examination, Dunn testified that, to his knowledge, none of the photographs in front of him depicted either of the defendants or any child known to have attended Fells Acres. Dunn testified that he spoke with other postal inspectors' offices and State authorities to determine whether the defendants or any Fells Acres children appeared in any photograph. To his knowledge, no such photographs had ever been found.

The defendants claim that they were prejudiced by Dunn's testimony, because the evidence (1) was "*completely* irrele-

vant"[5] to the purpose for which it was admitted and (2) its admission was tantamount to the admission of "other crimes" evidence and hence prejudicial error. The defendants also allege error in admitting Dunn's testimony as to child pornography because the subject was within the jurors' knowledge and therefore it was error to admit expert testimony. They also allege error in the instructions.

The record shows that the Commonwealth offered Dunn's testimony to establish a motive for the abuse.[6] The defendants concede (1) that, as a general rule, the Commonwealth is entitled to introduce all relevant evidence of motive, see *Commonwealth* v. *Weichell*, 390 Mass. 62, 73 (1983), cert. denied, 465 U.S. 1032 (1984); *Commonwealth* v. *Borodine*, 371 Mass. 1, 8 (1976), cert. denied, 429 U.S. 1049 (1977); (2) that "Dunn's testimony was not offered as evidence of acts committed by the defendants"; and (3) that the Commonwealth's theory at trial was "that the children here were sexually molested for the purpose of obtaining pornographic photographs." "The purpose for which evidence is offered is determinative of its relevancy." *Commonwealth* v. *Jewett*, 392 Mass. 558, 564 (1984). See *Commonwealth* v. *Soares*, 384 Mass. 149, 161 (1981). The Commonwealth asserts that Dunn's testimony provided a possible motive for the sexual abuse and thus was relevant to the issue of motive and, hence, admissible on that issue. See *Weichell, supra; Com-*

---

[5]In their brief, the defendants argue that "the Commonwealth's clear purpose in eliciting testimony descriptive of selected photographs depicting individuals similar to these defendants and acts similar to those described by the children in this case was to permit the inference that what happened there could have happened here as well. The fact that individuals other than these defendants allegedly perpetrated similar acts against unknown children under unknown circumstances at unknown times, does not render it more probable that these defendants sexually abused these children for any purpose. . . . In the absence of even a scintilla of evidence that these defendants engaged in the trade or sale of pornography, evidence that others may have done so was completely irrelevant."

[6]During a bench conference, the judge stated that he allowed Dunn's testimony for limited purposes, "primarily, motive . . . . The proving of the peculiar way of doing the act is — you know, probably buttresses the fact that that was their motive."

*monwealth* v. *St. Germain*, 381 Mass. 256, 271 (1980);
*Commonwealth* v. *Brown*, 376 Mass. 156, 164 (1978); *Commonwealth* v. *Borodine*, 371 Mass. 1, 8 (1976).

Dunn's testimony suggested that, generally, one motive for sexually abusing children is the production of pornographic photographs for distribution in an underground market. "Proof of motive need not be by direct evidence but may be based on inferences which could reasonably be drawn from the circumstances. . . . [E]vidence that 'merely suggests rather than "clearly shows" a motive for the crime may still be ruled admissible.' " (Citations omitted.) *Weichell, supra* at 73-74, quoting *St. Germain, supra* at 271. Although the defendants correctly note that no photographs connected to them were found, they concede that "[e]vidence to support this theory of motive came from [the four] children who testified that their pictures were taken coincident with the alleged acts of abuse." The children testified that they were photographed while posed in the nude, often with a variety of objects inserted in their vaginas or rectums.[7] Dunn's testimony was relevant to suggest a motive for photographing the children in these various poses. The judge did not abuse his discretion by admitting Dunn's testimony as relevant to the issue of motive.[8] See *St. Germain, supra* at 271.[9]

---

[7]The male victim testified that, when he was nude, Gerald Amirault photographed him as the defendant Amirault posed him with a stick inserted in his rectum. He also testified that Gerald Amirault photographed him while he was posed with LeFave's mouth on his penis.

Although the children did not use the same terminology as Dunn, they did describe a variety of objects. The male victim said the stick "looked like a gun." He also described how the defendants harmed a bird, a squirrel, a "hot dog" dog, and a raccoon. Some of the female victims referred to "wands."

[8]The judge instructed the jury that "testimony with respect to the taking of pictures of children," which would include Dunn's testimony, "was allowed in for the limited purpose of establishing what might have been the motive, if there was one. Ultimately, as I indicated, it would be allowed in for a motive, but the motive is not an element of the crime.

"The Commonwealth does not have to establish a motive in this case, but evidence of a motive was admitted in this case. But the Commonwealth does not have to make that out. It is not part of the essential ele-

The defendants next claim that "the admission of Dunn's testimony was tantamount to the admission of 'other crimes' evidence not involving these defendants" and suggest that it was error to admit his testimony because there was no connection between the defendants or the crimes here and the "bad acts evidence." We conclude that there was no error. The judge instructed the jury on the limited purposes for which he admitted all of the picture taking testimony: to establish motive. Dunn's testimony was relevant and admissible for that purpose. If "evidence [here, testimony regarding the taking of pictures of the children in various poses] . . . is connected with the facts of the case, it may be admitted to establish 'knowledge, intent, motive, method, material to proof of the crime charged.' " *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 695 (1979), quoting *Commonwealth* v. *Murphy*, 282 Mass. 593, 598 (1933). The testimony of each of the child victims that they were photographed by the defendants while the defendants sexually abused them was sufficient to suggest the defendants had a motive for their conduct.

---

ment of any of the crimes which I will charge you with later on in my instructions."

[9]The defendants challenge the admission in evidence of Dunn's expert testimony arguing that Dunn's description of the photographs before him required no special knowledge and should not have been admitted under the guise of expert opinion. "Our traditional view of what is a proper subject of expert testimony has been that, if other criteria are met, such testimony is admissible if, in the judge's discretion, the subject is not within the common knowledge or common experience of the jury. . . . [T]he question [is] whether, in the wide discretion of the trial judge, the subject was one on which the opinion of an expert would have been of assistance to the jury." (Citations omitted.) *Commonwealth* v. *Francis*, 390 Mass. 89, 98 (1983). See *Commonwealth* v. *Dockham*, 405 Mass. 618, 628 (1989); *Commonwealth* v. *Pikul*, 400 Mass. 550, 553 (1987); *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982).

There was no error. The photographs here were not admitted in evidence or even displayed to the jury. It would have been within the judge's discretion to conclude that the types of poses typically depicted in child pornography constituted information beyond the common knowledge or experience of the jurors and that Dunn's expert testimony would have aided the jurors. See *Commonwealth* v. *Russ*, 232 Mass. 58, 73 (1919).

The cases that the defendants rely on do not advance their claim. In *Commonwealth* v. *Tobin*, 392 Mass. 604 (1984), this court concluded that "evidence of the relationship between . . . other participants in the second enterprise was not relevant to their involvement in the earlier and completely separate scheme involving Tobin." *Id.* at 615-616 (finding no reversible error in improperly admitting evidence of the second enterprise). Here, there were no allegations that other persons were involved in the defendants' scheme to sexually abuse the children and Dunn's testimony was not offered for that purpose. The defendants also rely on *Commonwealth* v. *Szemetum*, 3 Mass. App. Ct. 651 (1975), which was concerned with the imputation of knowledge, or criminal intent, by association with unrelated arrests. The factual similarities between *Szemetum* and the present case and, hence, its precedential value, are tenuous at best. Dunn's testimony was not offered to prove criminal intent or to show that the defendants had knowledge that they or any other persons were engaged in criminal activity.

The defendants also argue that "[t]he Court's instruction regarding the use of the evidence of pornography for purposes of corroboration, invited the jury to conclude that the defendants were part of a common scheme to create and distribute child pornography." This was not the basis of counsel's objection at trial.[10] Defense counsel's objection at the

---

[10]Contrary to the suggestion in the dissent, *post*, that this instruction could be viewed as referring to Dunn's testimony, vigilant defense counsel did not understand the instructions as referring to Dunn's testimony. The record indicates that defense counsel objected to the instruction because the reference to common scheme permitted the jurors to "consider . . . with respect to 'commonality,' the fact of a charge or an accusation in another indictment. . . . The instruction would permit them [the jurors] to 'tailgate' . . . guilt from one indictment just by virtue of the fact that . . . there was an accusation contained in a second indictment." That is the sole basis of the defendants' objection to the instruction. To the extent the defendants now argue that the instructions referred to Dunn's testimony, we conclude that the instructions do not refer to Dunn's testimony. We are bolstered in our conclusion by the fact that defense counsel did not so understand the instruction at trial and did not object to the instruction on that ground.

conclusion of the instructions clearly indicated that his objection was based on the use of one child's testimony to corroborate the other, and not that the instructions referred to Dunn's testimony. *Commonwealth* v. *Drew*, 397 Mass. 65, 80 (1986).[11]

The judge specifically instructed the jury that the defendants were not charged with child pornography and that no testimony was being admitted as evidence of that crime. In his instruction, the judge was referring to the testimony by the children that their pictures had been taken in the course of the rapes and indecent assault and battery incidents. See note 11, *supra.* The instruction at issue did not in any way single out or highlight Dunn's testimony or the subject of child pornography. Rather, the judge referred generally to "testimony with respect to the taking of pictures of the children," which was concerned primarily with the testimony regarding the taking of photographs given by the four children. Moreover, the instruction on "common scheme" addressed the credibility of the children and the use of one child's testimony to corroborate another child's testimony.[12] Defense

---

[11]The judge instructed the jury that "there was some evidence that was not admitted in for all purposes, it was only admitted in for a limited purpose . . . . I allowed in testimony with respect to the *taking of pictures of the children.* Now, the defendants are not charged with a crime of taking pictures of the children. That is not the reason it was allowed in. It was allowed in for limited purposes. First of all, it may have shown a common scheme, and it is up to you to decide that and not for me. But it may be of assistance in determining whether there was corroboration among the children consistent with my earlier instruction on 'common scheme.' Likewise, it was allowed in for the limited purpose of establishing what might have been the motive, if there was one." (Emphasis supplied.)

[12]The instruction on "common scheme" stated that "with respect to the credibility [of the child-witnesses], you may consider whether evidence was introduced in connection with one indictment that the [defendants] engaged in conduct that was similar in nature to the conduct charged in another incident or in other indictments. If you find beyond a reasonable doubt the defendant[s] did engage in the conduct alleged in one indictment and you find that the conduct and the conduct alleged in another or other indictments has sufficiently similar characteristics, then, you may, but you need not, infer that the acts charged in the indictments were part of a common plan or scheme committed by the defendant[s]. If you find that the defendants engaged in conduct which amounts to a common

counsel clearly understood the instructions that way. See note 11, *supra*. That instruction referred to a plan or scheme involving picture taking in the rape and indecent assault and battery cases and did not in any way allude to a scheme "to create and distribute child pornography." In sum, none of the instructions invited the jury to consider Dunn's testimony as evidence of "other crimes" or of a common scheme to engage in child pornography.

2. *The prosecutor's closing argument.* The defendants argue that comments made by the prosecutor in closing "were impermissible attempts to invoke sympathy and emotion of the jurors" and were "so prejudicial as to require reversal." We do not agree.[13]

In their summations, both defense attorneys pursued that theory by attacking the credibility of the victims. The defendants emphasized that the victims delayed in disclosing the sexual abuse and attacked the prosecution's theory that the defendants' threats caused those delays. During their summations, the defendants' attorneys theorized that, as a result of repeated leading and suggestive questions by parents, police, social workers, doctors, and prosecutors, the victims fabricated the allegations of abuse.

---

scheme or plan, you may consider whether the testimony of one or more children involved in the scheme or plan corroborates the testimony of another child or other children involved in the scheme or plan."

[13]In his closing argument, the prosecutor stated,"You have heard no evidence that anybody pushed [the child-victim, M.T.] to talk. Once that child received some reassurance that her mother loved her, that her mother would not be hurt, that she would not be hurt, the child began to open up . . . . She told you, as she said back at the very beginning of this case, that she was afraid to tell because she was told that her mother would be killed and she would be sent away. Some of you have children, some of you have grandchildren. Think about the impact that that kind of ' a threat will have on a four year old child . . . .

"I suggest to you, ladies and gentlemen, that when you consider the totality of the evidence in this case, that when you apply your common sense, your everyday experience in your own lives with your own children or grandchildren . . . or brothers or sisters, that you will find, based on the evidence, that these defendants are guilty as charged."

The Commonwealth claims that "the prosecutor did nothing more than fairly respond to the defendants' summation by offering an explanation for the victim[s'] delay in disclosing the abuse, and asking the jury to evaluate [the victims'] testimony concerning the threat in light of their own experience with children of similar age." The Commonwealth argues that, "[h]aving forcefully used the fact of the victims' delayed disclosures and questioning by different people to suggest that there were no threats and sexual abuse, the defendants should not now be allowed to argue that the prosecutor was foreclosed from responding with equal force in his summation that the victims' delay in disclosing the sexual abuse was explained by, and consistent with, being threatened by the defendants." We agree with the Commonwealth. A "defense counsel's argument may justify a particular rebuttal from the prosecutor . . . ." *Commonwealth* v. *Kozec*, 399 Mass. 514, 519 (1987). The prosecutor's comments were reasonably "within the prosecutor's right of retaliatory reply." *Commonwealth* v. *Prendergast*, 385 Mass. 625, 633 (1982), and cases cited. See *Commonwealth* v. *Earltop*, 372 Mass. 199, 206 (1977) (Hennessey, C.J., concurring).

The judge denied the defendants' motion for mistrial made immediately following the prosecutor's summation. The judge gave a curative instruction, as requested by the defendants.[14] The defendants now argue that that instruction "[did] little to alleviate the prejudicial effect of the comments." We do not agree. The judge's instructions specifically addressed the comments and clearly directed jurors not to be influenced by their status as parents and grandparents. "We are unwill-

---

[14]The judge instructed as follows: "Reference was made in argument by one of the counsel with respect to the fact that many of you are parents and grandparents, and no doubt you are. However, of course, that is irrelevant to the deliberations. What you must do is stand indifferent to the outcome and decide this case not on the fact that you are parents or grandparents but solely on the evidence that you have heard during the course of the trial and in accordance with the law and without regard to extraneous matters such as the fact that you happen to be parents and grandparents."

ing to assume that the jury would not have heeded these instructions." *Commonwealth* v. *Errington*, 390 Mass. 875, 882 (1984), and cases cited. See *Commonwealth* v. *Amirault*, 404 Mass. 221, 240 (1989).

The defendants also argue that the statements here "are extremely similar" to the closing remarks in *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 753-754 (1986). We do not agree. In *Sevieri*, while describing each step taken by an assailant during an assault, the prosecutor repeatedly directed the jurors to place themselves in the position of the victim. The remarks here were not reasonably susceptible of being interpreted as an appeal to the jurors to place themselves in the victim's position. Moreover, the remarks in *Sevieri* were not made in response to the defendant's closing argument, as occurred here.

3. *The admission of fresh complaint testimony.* The defendant LeFave challenges the admission of fresh complaint testimony from the mother of one of the children.[15] The mother testified that, when interviewed by a social worker approximately eighteen months after leaving Fells Acres, her daughter initially denied being abused, but that within minutes of that interview's completion, the child told her mother that a clown put a pencil, a thermometer, and his "pee-pee" in the child's "bum-bum" and "pee-pee." The mother testified that, at a later time, her daughter stated that LeFave touched her in the vagina and "bum-bum" with a pencil and a thermometer and took photographs of the naked child. The defendant LeFave asserts that the judge abused his discretion in admitting the fresh complaint testimony concerning the clown, arguing that that testimony did not corroborate the child's allegations with respect to LeFave. The defendant LeFave concludes that, because the complaint "was in no manner corroborative of the victim's testimony at trial and was inflammatory and prejudicial, the trial court abused its discretion in admitting evidence of the . . . fresh complaint."

---

[15]The fresh complaint testimony pertained to indictments involving one of the child-victims and the defendant LeFave only.

We conclude that the judge did not err by admitting the "whole statement including the details" for corroborative purposes only. *Commonwealth* v. *Hanger*, 357 Mass. 464, 466 (1970). *Commonwealth* v. *Bailey*, 370 Mass. 388, 396 (1976).

In sexual assault cases, evidence of a fresh complaint is admitted "for the more general purpose of confirming the testimony of the . . . [victim]." *Hanger, supra* at 466, quoting *Commonwealth* v. *Cleary*, 172 Mass. 175, 176-177 (1898). On both direct and cross-examination, the child was asked about her interview with the social worker and the child testified that she talked about a clown. The fact that the mother's fresh complaint testimony was more detailed about the clown than the child's testimony did not render her fresh complaint evidence inadmissible. See *Bailey, supra* at 396.

During the mother's testimony, the judge instructed the jury that fresh complaint testimony was being admitted only for corroborative purposes. He repeated that instruction in his final charge to the jury. The defendant LeFave does not claim error in the instructions. Compare *Bailey, supra*, with *Commonwealth* v. *Spare*, 353 Mass. 263, 266 (1967). "The testimony complained of assumed particular relevance when considered in light of the various attempts by the defendant's trial counsel to insinuate by questioning and argument that the testimony of the victims had been influenced by parents, social workers and members of the prosecution team. The cases decided in the wake of *Commonwealth* v. *Bailey*, 370 Mass. 388, 391-397 (1976), do not support the notion that fresh complaint evidence should be excluded in cases such as the present." *Commonwealth* v. *Baran*, 21 Mass. App. Ct. 989, 991 (1986), and cases cited.

4. *Competency of the child-witnesses.* In *Commonwealth* v. *Tatisos*, 238 Mass. 322, 325 (1921), this court stated that, in order to determine competency of a child-witness, " '[t]he ultimate test . . . must depend upon the existence of [an] understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and

the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment.'" *Commonwealth* v. *Reid,* 400 Mass. 534, 542 (1987), quoting *Tatisos, supra.* The defendants argue that the judge's examination of the four child-witnesses "failed to completely satisfy the . . . [*Tatisos*] test since the inquiries failed to elicit responses demonstrating each child's awareness that a failure to tell the truth would result in punishment or other consequences, [and as] a result, the [judge's] determination that each child was [competent was] based on an incorrect application of the relevant legal standard." They claim that "[h]ere there is no indication that the four children . . . possessed a general understanding of the consequences of telling a lie."

In determining competency, "[t]he judge is afforded wide discretion — indeed, is obliged — to tailor the competency inquiry to the particular circumstances and intellect of the witnesses." *Commonwealth* v. *Brusgulis,* 398 Mass. 325, 329-330 (1986). "Much which cannot be reproduced by the printed word depends on the child's appearance and manner. It is seldom that the discretion of the trial judge can be revised; its exercise must have been clearly erroneous to justify such action." *Tatisos, supra* at 325, and cases cited. See *Reid, supra* at 542. Although the judge could have asked a specific question about whether the children understood the consequences of telling a lie, the record supports his competency findings. The children's answers to the judge's questions indicated that they were aware of the difference between a truthful statement and a lie and that they understood the importance of telling the truth in court. There was no error. See *Commonwealth* v. *Dockham,* 405 Mass. 618, 624 (1989); *Commonwealth* v. *Bergstrom,* 402 Mass. 534, 540 n.7 (1988); *Commonwealth* v. *Welcome,* 348 Mass. 68, 70 (1964); *Tatisos, supra* at 325-326; *Commonwealth* v. *Corbett,* 26 Mass. App. Ct. 773, 776 (1989).

5. *Denial of the defendants' motions for required findings of not guilty on two indictments.* Amirault and LeFave were both indicted for the rape and indecent assault and battery of

the male victim. At trial, the male victim testified to a single incident where Amirault placed a stick in his rectum and LeFave put her mouth on his penis while Gerald Amirault took pictures. Defense counsels' motions for a required finding of not guilty on the indictments charging the defendants with indecent assault and battery were denied. The defendants claim that the judge committed error by denying the motions, arguing that the victim described a single act that could not support a verdict of guilty on charges of both rape and indecent assault and battery.

The defendants acknowledge that "to determine whether a defendant may be convicted of two statutory offenses arising from a single incident, 'the long-prevailing test in this Commonwealth is whether each crime requires proof of an additional fact that the other does not.' " *Commonwealth* v. *Crocker*, 384 Mass. 353, 357 (1981), quoting *Commonwealth* v. *Jones*, 382 Mass. 387 (1981). *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871). At the time of the offense here, indecent assault and battery of a child required proof of lack of consent or lack of capacity to consent, an additional fact not required in statutory rape. See *Commonwealth* v. *Reid*, 400 Mass. 534, 541 (1987). Thus, we concluded that "indecent assault and battery of a child . . . was not a lesser included offense within the crime of rape of a child." *Id.* The defendants do not cite to nor attempt to distinguish *Reid*. Rather, they "urge [this] court to adopt the view of *Commonwealth* v. *Jones*," 382 Mass. 387 (1981). That case is of no aid to the defendants because it does not adopt a "view" that is any different from *Reid*. In *Jones*, we disallowed multiple punishments because neither offense there required proof of an additional fact that the other did not. *Id.* at 393-394.

*Judgments affirmed.*

LIACOS, C.J. (dissenting). The court today condones the admission in evidence of highly inflammatory and prejudicial

testimony offered in support of the dubious proposition that
the testimony related to the defendants' "motive." Thus, I
cannot join in part 1 of the court's opinion. The crimes of
which the defendants have been convicted are indeed hei-
nous. Nevertheless, the facts of this case should not drive the
court to a distortion of sound evidentiary principles nurtured
and developed over many years as an essential guarantee of a
fair trial. We should not allow outrage at the nature of the
alleged crimes or sympathy for the alleged victims to cloud
our constitutional duty to determine whether there was prej-
udicial error in this case.

The testimony of the expert witness, United States Postal
Inspector Dunn, was not legally relevant to the indictments
before the jury. The defendants were charged with indecent
assault and battery on children under the age of fourteen and
rape of children under the age of sixteen. The Common-
wealth offered as evidence of the defendants' motive Dunn's
detailed descriptions of pornographic photographs of children
taken by persons not in any way connected to the defendants.
Dunn also described objects, not mentioned by the children
in this case, such as gun barrels, scissors, and dildoes, which
were inserted into the genitalia of minors who were com-
pletely unrelated to this case.[1] Additionally, Dunn was al-
lowed to engage in a generalized discussion before the jury of
the child pornography industry.

"In order to be considered relevant, 'the evidence must
have rendered the desired inference more probable than it
would have been without it.' " *Commonwealth* v. *Fayer-
weather*, 406 Mass. 78, 83 (1989), quoting *Commonwealth*
v. *Copeland*, 375 Mass. 438, 443 (1978). See *Green* v. *Rich-
mond*, 369 Mass. 47, 59 (1975). Testimony concerning pho-
tographs depicting unnamed and unidentified children in por-
nographic poses is not relevant to whether these defendants
in this particular case were more likely to have had the mo-

---

[1] Dunn mentioned, among other things, "barrels of guns," "scissors,"
"pieces of fruit," "pieces of vegetables," "vibrators," "dildoes," and
"animals."

tive of committing the acts with which they were charged. The photographs about which Dunn testified were not related to the defendants in any way; they were not in evidence. They were not taken by the defendants and had not been in the possession of the defendants. There was no evidence to show that the children depicted in the photographs were the children involved in this case. And there was no evidence that the children in this case were forced to pose with gun barrels, scissors, dildoes, fruit, vegetables, or animals.

The Commonwealth apparently desired the jury to infer that, because pornographers often take photographs of children in poses similar to those described by the children involved in this case, these defendants took pictures of the victims for the purpose of distributing and marketing the photographs in the pornographic trade. Without any supporting evidence, that connection is so remote that it cannot be deemed to pass the threshold test of relevance. See *Commonwealth* v. *Fayerweather, supra* at 83. There was no evidence presented that the defendants were engaging in the pornography trade. No pornographic photographs allegedly taken by the defendants were presented in evidence. In short, Dunn's testimony was irrelevant to show motive.[2] See *Commonwealth* v. *Lamrini*, 392 Mass. 427, 433-435 (1984).

---

[2]The admission of Dunn's testimony also violated the well-established rule in this Commonwealth that an expert may not give his opinion based on evidence which is inadmissible. *Department of Youth Servs.* v. *A Juvenile*, 398 Mass. 516, 527-528, 531 (1986). *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 32 (1979). *Commonwealth* v. *Russ*, 232 Mass. 58, 73 (1919). We have rejected the suggestion that we should follow Fed. R. Evid. 703 and Proposed Mass. R. Evid. 703, which allow an expert to testify based on "facts or data [which] need not be admissible in evidence." *Department of Youth Servs.* v. *A Juvenile, supra* at 528. We do, however, allow an expert to "base an opinion on facts or data not in evidence if the facts or data are *independently admissible* and are a permissible basis for an expert to consider in formulating an opinion" (emphasis supplied). *Id.* at 531. The photographs about which Dunn testified are not "independently admissible"; the evidence of highly prejudicial photographs, entirely unrelated to this case, was not and could not have been admitted. In my view, the judge abused his discretion in allowing Dunn to refer to these photographs and to describe them in his testimony.

Even assuming Dunn's testimony about pornography was marginally relevant, its probative value was far outweighed by its highly prejudicial effect.[3] Dunn testified about the contents of several unidentified photographs in painstaking detail.[4] He alluded to props and poses in photographs of unknown origin similar to pictures described by the children as taken by the defendants in this case.[5] Dunn also described the "underground market" for child pornography. Dunn testified that it is very difficult to identify a child-victim from a particular piece of pornography. He finally testified that there is no central source in this country to help identify a child-victim in a particular photograph.

Dunn's testimony suggested to the jury that these very photographs could have been photographs of the children in this case. Without any supporting evidence, and placed just beyond the view of the jury, these photographs were used by the witness in the presence of the jury. This testimony and Dunn's related testimony served more to inflame the passions of the jury than to assist them in deciding an issue in this case.

---

[3]When reviewing the admission of motive evidence in past decisions, this court has referred to the probative worth of the evidence weighed against its prejudicial effect. See, e.g., *Commonwealth* v. *Todd*, 394 Mass. 791, 798 (1985); *Commonwealth* v. *St. Germain*, 381 Mass. 256, 271 (1980); *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 695 (1979); *Commonwealth* v. *Brown*, 376 Mass. 156, 165 (1978). Implicit in every relevance determination is the question whether the probative value outweighs the prejudicial effect. See P.J. Liacos, Massachusetts Evidence 409-411 (5th ed. 1981 & Supp. 1985).

The defendants in this case objected to the testimony and moved for a mistrial. The judge clearly was on notice as to the danger of allowing such testimony.

[4]The following are examples of the nature of Dunn's testimony. "They're posed laying . . . prone on a bed or couch with their hands back, and they're nude from maybe the chest area down, with their genitals exposed . . . Sitting in a sitting position, with their legs spread apart and their hands down by their genitals . . . . There are two here with a you can see the arms, I can't tell somebody's arms, and then the child."

[5]No photographs taken by the defendants were ever found to corroborate the testimony of the child-witnesses.

The defendants were not charged with violating the laws prohibiting child pornography. Yet Dunn's testimony suggested to the jury that the defendants had violated the pornography laws — based not on the acts of the defendants but on the acts of unnamed and unknown third parties.[6] Even if the jury did not infer that the photographs described depicted the children in this case, the testimony was nonetheless highly prejudicial. Testimony concerning child abuse perpetrated by anonymous persons on anonymous children could have improperly played on the jury's sympathy for the children in this case. In addition, there was inherent prejudice in Dunn's allusion to objects, including scissors, dildoes, vibrators, and gun barrels, which were inserted into the genitalia of minors depicted in photographs unconnected with this case, and in his discussion of sexual poses with animals, also not mentioned by the children in this case. This testimony served only to stir the indignation and disgust of the jury, distracting them from the relevant, admissible evidence in this case.

The judge compounded the prejudice in his instruction to the jury on "common scheme." The judge, while instructing the jury that the defendants were not charged with the crime of violating pornography laws, nevertheless instructed the jury that they could consider "the taking of pictures of the children" because "it may have shown a common scheme." The court today states that the judge was referring to the testimony by the children that their pictures had been taken during the course of the abusive conduct. The court does not

_____

[6]The court, *ante* at 935, quotes from *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 695 (1979), which originally read: "When, however, the evidence is not too remote in time, or is connected with the facts of the case, it may be admitted to establish 'knowledge, intent, motive, method, material to proof of the crime charged.' " *Id.*, quoting *Commonwealth* v. *Murphy*, 282 Mass. 593, 598 (1933). The court glosses over the fact that the photographs described in this case had absolutely no connection with the facts of this case. Inserting into the quotation a parenthetical phrase ("here, testimony regarding the taking of pictures of the children in various poses") does not make the evidence any more relevant to the facts of this case.

— but should — ask what a reasonable jury could glean from the charge. See *Commonwealth* v. *Claudio*, 405 Mass. 481, 484 (1989). The instruction given can be viewed reasonably as a reference to Dunn's expert testimony which, after all, dealt exclusively with the taking of pictures of children. The jury could have understood participation in the underground pornography industry, described by Dunn, as the "common scheme" to which the judge alluded. The judge stated to the jury that the testimony "was allowed in for the limited purpose of establishing what might have been a motive." This appears to be a direct reference to Dunn's testimony about pornography.[7] In my view, this is one of those rare cases where the trial judge abused his discretion by admitting in evidence testimony which was not only irrelevant but which was highly prejudicial. See *Commonwealth* v. *Richmond*, 371 Mass. 563, 565-566 (1976). For this reason, and because the evidence of guilt was highly dependent on the jury's assessment of the credibility of witnesses, I would reverse the convictions. I dissent.

---

[7]The court appears to recognize that the judge was indeed referring to Dunn's testimony. In note 8, *ante* at 934, the court, purportedly attempting to show that the judge gave a limiting instruction on motive, quotes from the same section of the charge which it later claims did not refer to Dunn's testimony. The court states: "The judge instructed the jury that 'testimony with respect to the taking of pictures of children,' *which would include Dunn's testimony*, 'was allowed in for the limited purpose of establishing what might have been the motive, if there was one' " (emphasis supplied). In note 10, *ante* at 936, the court states, "[W]e conclude that the instructions do not refer to Dunn's testimony." The court cannot have it both ways.